Opinion issued November 15, 2007 




 















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00118-CV
__________
 
E.I. DU PONT DE NEMOURS AND COMPANY, Appellant
 
V.
 
SHELL OIL COMPANY, Appellee
 

 
 
On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2005-11339
 

 
 
O P I N I O N
          Appellant, E.I. Du Pont De Nemours and Company (“Du Pont”), challenges the
trial court’s rendition of summary judgment


 in favor of appellee, Shell Oil Company
(“Shell”), in Du Pont’s suit against Shell for breach of an indemnification agreement. 
In four issues, Du Pont contends that Shell owed Du Pont a duty to indemnify it for
“defense costs that advanced both [] the defense of Shell related to Waste Materials
and [] the defense of Du Pont (or another defendant) related to waste from another
facility”; Du Pont properly allocated a percentage of these “defense costs” to Shell;
Du Pont properly segregated the defense costs “that did not relate to the defense of
Waste Materials” from the remainder of the defense costs that did relate to Waste
Materials; Shell owed Du Pont a duty to indemnify it for “a share of the settlement
funds it paid to resolve ‘Claims related to Waste Materials’”; and the trial court
should have awarded it “defense costs for its prosecution of its indemnity claim.”
          We reverse and render. Factual and Procedural Background
          Pursuant to a Detergents Toll Conversion Agreement (“DTCA”), Du Pont
manufactured Shop Ligand, a chemical, at a facility in Mobile, Alabama, using
Shell’s raw materials and for Shell’s use. Under the DTCA, Shell retained ownership
of the wastes and waste by-products from the Shop Ligand production process,
referred to by the parties in the DTCA as the “Waste Materials.” Moreover, Shell
designated the transporter and the disposal site of the Waste Materials and reimbursed
Du Pont for transportation and disposal costs. Finally, article 15 of the DTCA
contained two indemnity provisions, which generally provided that Shell would
“defend and indemnify Du Pont . . . against all Claims related to Waste Materials.”
          Du Pont shipped over 12 million pounds of Waste Materials to an injection
well in Bayou Sorrell, Louisiana. The injection well subsequently became the subject
of multiple lawsuits ultimately consolidated into a class action suit in federal district
court. Du Pont and Shell, as well as hundreds of other defendants, were sued in this
underlying litigation for their roles in generating and disposing of wastes at the
injection well. The plaintiffs in the underlying litigation did not identify any
particular defendant as responsible for any specific waste. Rather, the plaintiffs
alleged that all of the defendants’ wastes commingled at the site and these
commingled wastes collectively harmed them. 
          All parties agree that Shell and Du Pont were sued, in part, for their roles in
generating and transporting Waste Materials to the injection well; both Shell and Du
Pont were also sued for claims unrelated to Waste Materials. Du Pont was sued for
shipping to the injection well (1) the Waste Materials and (2) 7.6 million pounds of
waste from its “Pontchartrain Facility” in La Place, Louisiana.
          After being sued, Du Pont requested that Shell, pursuant to the DTCA, provide
it a defense and indemnity in the underlying litigation. Although Du Pont requested
a response within 30 days, Shell responded to this demand over one year later. Shell
recognized its “responsibility” for the Waste Materials, but denied responsibility for
waste from other facilities. Shell stated that it would not “defend or indemnify any
judgment against Du Pont for other wastes” and offered Du Pont a limited indemnity,
conditioned upon Du Pont’s waiving its right to recover settlement payments if the
plaintiffs and defendants in the underlying litigation accomplished an “early
settlement.” Shell also indicated that it was unwilling to reimburse Du Pont for any
defense costs expended prior to Shell’s offer. Du Pont rejected Shell’s conditional
indemnity and continued its defense. 
          The plaintiffs and defendants eventually settled the underlying litigation. 
Thereafter, Shell sent Du Pont another letter stating that it intended to indemnify Du
Pont only for shipments of Waste Materials. Shell asserted that the parties needed to
“determine how to split out those costs solely related to the waste shipped from [the
Mobile Facility] on [Shell’s] behalf.” (Emphasis added.) Shell requested that Du Pont
submit its costs with supporting documentation, and, in December 2004, Du Pont sent
Shell a letter breaking down its annual defense costs. Du Pont then requested that
Shell pay (1) a percentage of defense costs that related to both Waste Materials and
non-Waste Materials and (2) $31,000 in costs that solely related to Waste Materials
for which Shell was “solely responsible.” Shell refused to pay any amounts other
than the $31,000 in defense costs solely related to Waste Materials. 
          Du Pont filed suit, asserting that Shell breached its duty to defend and
indemnify it in the underlying litigation. Shell answered, and filed a motion for
partial summary judgment, seeking a declaration that it owed Du Pont indemnity
“only for defense costs directly related” to Waste Materials, and not a percentage of
costs incurred by Du Pont “in its overall defense.” (Emphasis added.) The trial court
granted Shell partial summary judgment, but in its order it simply tracked the
language of the DTCA, declaring that Shell was required to indemnify Du Pont for
“defense costs and settlement funds per [s]ection 15 of the [DTCA] incurred by Du
Pont which are related to the Waste Materials.” 
          The parties then filed cross motions for summary judgment. In its summary
judgment motion, Du Pont argued that the DTCA was unambiguous and required
Shell to defend and indemnify Du Pont for the majority of defense costs expended in
the underlying litigation because the defense costs “related to” Waste Materials. Du
Pont attached to its motion the affidavit of Bruce Evanick, Du Pont’s counsel, and Du
Pont later filed several supplemental affidavits from Evanick. In these affidavits,
Evanick explained that pursuant to the DTCA, Du Pont was seeking to recover from
Shell (1) $498,212.60 in “reasonable and necessary defense costs (including
attorney’s fees and other defense costs)” and settlement costs, which represented only
“an allocated portion” of its total defense and settlement costs related to Waste
Materials and (2) $224,620.90 for “attorney’s fees and costs” incurred in prosecuting
its indemnity claim against Shell. 
          In regard to Du Pont’s claim for defense and settlement costs of the underlying
litigation, Evanick agreed that, in addition to representing Du Pont for disposing 12
million pounds of Waste Materials into the injection well, his firm had also
represented Du Pont for disposing 7.6 million pounds of Pontchartrain Facility wastes
into the well. Evanick further agreed that, at times during the underlying litigation,
his firm represented two other defendants responsible for commingled wastes at the
injection well. In determining the amount of defense costs properly chargeable to
Shell, Evanick explained that he first identified defense costs “that did not relate to
Waste Materials,” i.e., those defense costs that solely related to the Pontchartrain
Facility wastes or wastes generated by the other represented defendants. Du Pont did
not seek any of these defense costs from Shell. Next, Evanick identified defense
costs for which Shell was solely responsible. Du Pont sought to recover 100% of
these defense costs from Shell. Evanick explained, for example, that these defense
costs included costs associated with reviewing documents that related only to the
Mobile Facility. Evanick was then left with a remaining pool of defense costs that
were “impossible” to segregate or assign either as solely related to Waste Materials
or non-Waste Materials, i.e., claims related to Pontchartrain Facility wastes and
wastes generated by other represented defendants. Evanick explained that attributing
these defense costs in such a manner was impossible because of the commingling of
all of the defendants’ wastes at the injection well, the common claims asserted by the
plaintiffs, and the common defenses raised by the defendants. Thus, Evanick opined
that all of these remaining defense costs “related to” Waste Materials, even if they
also related to non-Waste Materials. In support of this opinion, Evanick stated that,
even if Du Pont had been sued only in regard to the Waste Materials, Du Pont still
would have incurred all of the remaining pool of defense costs because he still would
have performed all of the underlying legal services in defense of these claims on Du
Pont’s behalf. As such, Evanick contended that Shell was contractually responsible
for all of these defense costs related to Waste Materials, which amounted to over one
million dollars, under the indemnity agreement. 
          Nevertheless, Evanick stated that because his firm also represented Du Pont
and, at times, other defendants in regard to commingled wastes, and because Du Pont,
Shell, and these other defendants all benefitted from these defense costs, Du Pont
sought from Shell only a prorated share of these costs.


 Evanick explained, in
considerable detail, the method he used to determine the appropriate pro rated share
that was charged to Shell.


 Specifically, after setting aside the defense costs unrelated
to Waste Materials as well as defense costs solely related to Waste Materials, Evanick
set forth the total annual defense costs incurred in defense of claims related to Waste
Materials, detailed the time periods for which he also represented parties other than
Shell in regard to non-Waste Materials, assigned a percentage of defense costs based
on these factors related to Waste Materials for which Shell would be responsible, and
calculated the reasonable amount of these costs allocable to Shell for each year. 
Evanick also calculated, based on these factors, a percentage of the settlement costs
for which Shell was responsible. In sum, Evanick stated that Shell was responsible
for $458,212.60 in defense costs and $40,000 in settlement costs for a total of
$498,212.60 in allocated defense and settlement costs.
          In its summary judgment motion, Shell reiterated its position that it was
responsible only for “costs actually related to wastes from the Mobile Facility” in the
amount of $31,000.
          In its final judgment, the trial court overruled Shell’s objections to Du Pont’s
summary judgment evidence. However, after finding that there were no contested
issues of material fact, the trial court denied Du Pont’s summary judgment motion
“except as to $31,00 in damages,” and granted Shell summary judgment “as to
defenses and denied as to claims for affirmative relief.”
Standard of Review
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When both parties move for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review the summary
judgment evidence presented by both sides and determine all questions presented and
render the judgment that the trial court should have rendered. Tex. Workers’ Comp.
Comm’n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004). A court
should construe an unambiguous contract as a matter of law, and, on appeal, the
court’s ruling is subject to de novo review. See J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003); MEMC Elec. Materials, Inc. v. Albemarle Corp., No.
01-05-00420-CV, 2007 WL 493963, at *3 (Tex. App.—Houston [1st Dist.] Feb. 15,
2007, pet. denied). Indemnification for Defense Costs
          In its first and second issues, Du Pont contends that Shell owed Du Pont a duty
to indemnify it for “defense costs that advanced both [] the defense of Shell related
to Waste Materials and [] the defense of Du Pont (or another defendant) related to
waste from another facility”; Du Pont properly allocated a percentage of these
“defense costs” to Shell; and Du Pont properly segregated the defense costs “that did
not relate to the defense of Waste Materials” from the remainder of the defense costs
that did relate to Waste Materials. 
          Indemnity agreements must be strictly construed, pursuant to the usual
principles of contract interpretation, in order to give effect to the parties’ intent as
expressed in the agreement. See Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417,
423 (Tex. 2000); Ideal Lease Serv., Inc. v. Amoco Prod. Co., 662 S.W.2d 951,
952–53 (Tex. 1983); Crowder v. Scheirman, 186 S.W.3d 116, 119 (Tex.
App.—Houston [1st Dist.] 2005, no pet.). We must give terms in an indemnity
agreement their plain, ordinary, and generally accepted meaning. Lehmann v.
Har-Con Corp., 76 S.W.3d 555, 562 (Tex. App.—Houston [14th Dist.] 2002, no
pet.). An indemnity agreement is unambiguous if it can be given a definite or certain
legal meaning, and we will construe an unambiguous indemnity agreement as a matter
of law. J.M. Davidson, Inc., 128 S.W.3d at 229. 
          Here, the DTCA provided, in relevant part,
          Section 15.2 [Shell] shall defend and indemnify Du Pont . . .
against all claims, suits, actions, liabilities, losses and expenses
(including reasonable attorney’s fees) including but not limited to injury,
disease, or death of persons or damage to property including
environmental damage (hereinafter referred to as “Claims’) related to
the materials . . . .
 
          Section 15.4 [Shell] shall defend and indemnify Du Pont . . .
against all Claims related to Waste Materials . . . .
 
(Emphasis added.)
          Both parties agree that the indemnity provisions are unambiguous. However,
the parties seek opposing constructions of the indemnity provisions based on the term
“related to.” Du Pont asserts that the indemnity provisions mean exactly what they
say, i.e., that Shell owed Du Pont indemnity for costs for claims related to Waste
Materials. Shell, on the other hand, contends that the plain meaning of the indemnity
provisions “leaves no doubt that Shell owed Du Pont indemnity only for costs that
were actually related to” the Waste Materials. Similarly, in its pre-litigation
correspondence, trial court pleadings, and partial summary judgment motion, Shell
asserted that its indemnity obligations applied only to defense costs “directly
attributable,” “solely related to,” “specifically related to,” or “directly related to” the
Waste Materials. 
          Our focus is on determining the intent of the parties as expressed in the
agreement. Crowder, 186 S.W.3d at 119. The DTCA defines “claims” to include “all
claims, suits, actions, liabilities, losses and expenses (including reasonable attorney’s
fees) including but not limited to injury, disease or death of persons or damage to
property including environmental damage.” The term “related to” means to “have
reference to” or “concern.” The New Oxford American Dictionary 1437 (2001);
see also Univ. of Tex. Law School v. Tex. Legal Found., 958 S.W.2d 479, 483 (Tex.
App.—Austin 1997, no pet.) (“Ordinarily, the words “related to” mean “pertaining
to,” “associated with,” or “connected with.”) (citing Webster’s Third New
International Dictionary 1916 (Philip E. Gove ed. 1986); Black’s Law
Dictionary 1288 (6th ed. 1990)). Here, the plaintiffs in the underlying litigation
alleged that they were harmed by commingled wastes shipped to the injection well
by hundreds of defendants, including Du Pont. Du Pont was sued, in part, for its
shipment of Waste Materials to the well. Thus, the plaintiffs’ claims against Du Pont,
and the defense costs expended to defend Du Pont in regard to these claims, related
to Waste Materials and triggered Shell’s indemnity obligations. 
          While Shell appears to agree with this general proposition, it proposes a
construction of the indemnity provisions that is contrary to the provisions’ plain
terms, rendering Shell’s indemnity obligations, at least under these circumstances,
virtually worthless. Shell sought, and effectively obtained, a summary judgment on
the basis that it owed Du Pont indemnity only for defense costs solely related to
Waste Materials. Yet, this qualifying terminology is nowhere in the indemnity
agreement. Here, although Du Pont was sued both for the disposing of Waste
Materials and non-Waste Materials into the well, it is undisputed that these wastes
were commingled in the well and were alleged to have collectively harmed the
plaintiffs. Du Pont presented undisputed evidence that there was (1) a small amount
of segregable defense costs that did not relate to the Waste Materials (for which it did
not seek to recover), (2) a small amount of segregable defense costs solely related to
Waste Materials (for which it sought to fully recover), and (3) a remaining pool of
defense costs that Du Pont would have expended even if it had only been sued in
regard to the Waste Materials (rendering the claims and the costs associated with
defending these claims necessarily related to Waste Materials). Under the plain terms
of the DTCA, Shell was not merely responsible for the minimal amount of defense
costs solely related to Waste Materials. We enforce the DTCA as written, reject
Shell’s assertion that it is liable only for defense costs in the amount of $31,000 solely
related to Waste Materials, and hold that Shell was contractually required to
indemnify Du Pont for defense costs expended in defense of the claims related to
Waste Materials, even if those costs also benefitted the defense of claims related to
non-Waste Materials. See Lehmann, 76 S.W.3d at 561–62 (construing indemnity
provision to provide common sense reading and giving terms in indemnity agreement
plain, ordinary, and generally accepted meaning). 
           Although Du Pont presented undisputed evidence that it expended
approximately one million dollars in costs that advanced the defense of claims related
to both Waste and non-Waste Materials, Du Pont did not seek to recover all of these
costs. Rather, because these defense costs related both to Waste Materials and non-Waste Materials and, accordingly, benefitted multiple parties, Du Pont sought an
allocated portion of these defense costs from Shell in the amount of $498,212.60
(including $40,000 in allocated settlement costs). 
          Both parties cite Tony Gullo Motors I, L.P. v. Chapa, as controlling authority
on the issue of segregation. 212 S.W.3d 299 (Tex. 2006). In Tony Gullo Motors,
Chapa, the plaintiff, asserted claims for breach of contract, violations of the
Deceptive Trade Practices Act, and fraud. Id. at 303. The jury awarded Chapa
$20,000 in attorney’s fees “in this case,” and Tony Gullo Motors objected on the
basis that attorney’s fees were not recoverable on Chapa’s fraud claim. Id. at 310. 
Noting that “fee claimants have always been required to segregate fees between
claims for which they are recoverable and claims for which they are not,” the court
sought to rein in an exception that it had previously recognized for “inextricably
intertwined” fees. Id. at 311 (citing Stewart Title Guaranty Co. v. Sterling, 822
S.W.2d 1, 10 (Tex. 1991)). Finding that this “inextricably intertwined” exception had
been difficult to consistently apply and had flooded courts with claims for otherwise
unrecoverable fees, the supreme court explained that to the extent it suggested in
Sterling “that a common set of underlying facts necessarily made all claims arising
therefrom ‘inseparable’ and all legal fees recoverable, it went too far.” Id. at 313. 
          The court “reaffirm[ed] the rule that if any attorney’s fees relate solely to a
claim for which such fees are unrecoverable, a claimant must segregate recoverable
from unrecoverable fees.” Id. (emphasis added).


 But the court also noted that,
[M]any if not most legal fees in such cases cannot and need not be
precisely allocated to one claim or the other. Many of the services
involved in preparing a contract or DTPA claim for trial must still be
incurred if tort claims are appended to it; adding the latter claims does
not render the former services unrecoverable. Requests for standard
disclosures, proof of background facts, depositions of the primary
actors, discovery motions and hearings, voir dire of the jury, and a host
of other services may be necessary whether a claim is filed alone or with
others. To the extent such services would have been incurred on a
recoverable claim alone, they are not disallowed simply because they
do double service.
 
Id. (emphasis added). 
          Tony Gullo Motors, although distinguishable from the instant case because Du
Pont is not seeking to recover intertwined fees on separate, nonrecoverable claims,
supports Du Pont’s indemnification request for defense costs expended to defend
Claims that relate to Waste Materials, even if such costs do not solely relate to Waste
Materials. In Tony Gullo Motors, the court confirmed that “it is only when discrete
legal services advance both a recoverable and unrecoverable claim that they are so
intertwined that they need not be segregated.” Id. at 313–14 (emphasis added). 
Similarly, here, Du Pont presented undisputed evidence that, based on the
commonality of the claims and defenses and the commingling of the Waste Materials
with the non-Waste Materials, even if Du Pont had been sued only in regard to Waste
Materials, Du Pont would have incurred defense costs for the same discrete legal
services for which it sought recovery from Shell. Because the discrete legal services
provided to Du Pont for which it seeks recovery advanced both Du Pont’s defense for
claims related to Waste Materials as well as claims related to non-Waste Materials,
Tony Gullo Motors supports Du Pont’s claims for recovery of the requested defense
costs fees from Shell.


 
          This Court has recently discussed a similar issue in regard to segregation in
Devon SFS Operating, Inc. v. First Seismic Corp., No. 01-04-00077-CV, 2006 WL
374257, at *14 (Tex. App.—Houston [1st Dist.] Feb. 16, 2006, no pet.) (mem. op.). 
In Devon SFS Operating, Inc., an indemnity action, the appellant complained that the
amount of attorney’s fees and costs awarded to the appellee included amounts
“attributable solely to defending” a third party for whom recovery of fees and costs
was not authorized under the relevant agreement. Id. We noted, however, that the
trial court’s record actually reflected that the fees and costs directly allocable to the
third party had been “promptly identified, segregated and noted as nonrecoverable.” 
Id. We further noted that, in response to the appellant’s complaints in the trial court,
the appellee had proportionately reduced the claimed amounts of attorney’s fees and
costs based on “percentages of time allocable to [the] defense” of this third party. Id. 
Finally, and most similar to the instant case, we noted that although the appellee had
proportionately reduced the amount of requested fees and costs, it had not made any
proportionate reduction for fees and costs that it “would have incurred in any event
because [the claimed fees] related” not only to the defense of the party (for whom
recovery of fees and costs was not authorized) but also to its defense (for which
recovery of fees and costs was authorized). Id. (emphasis added). We affirmed the
award, stating that the appellant had not refuted the evidence that all of the claimed
fees and costs were “integral to” the appellee’s defense, even though some of the fees
and costs also related to the defense of the third party for whom recovery of such
costs was not authorized. Id.
          As in Devon SFS Operating, Inc., here, the record establishes that Du Pont
segregated defense costs expended in defense of claims solely related to non-Waste
Materials—including any such defense costs solely related to the defense of claims
related to Pontchartrain Facility waste and wastes generated by the other represented
defendants. Du Pont also segregated a limited amount of fees expended to defend
claims solely related to Waste Materials. Du Pont was then left with a remaining pool
of defense costs that related to Waste Materials, even though such defense costs also
advanced the defense of claims related to non-Waste Materials. Again, although Du
Pont might have been entitled to seek recovery of these defense costs under the plain
terms of the agreement, Du Pont instead sought a percentage of these defense costs
after analyzing the time periods for which Evanick’s firm represented Du Pont’s
interest in regard to the 7.6 million pounds of non-Waste Materials as well as the time
periods Evanick’s firm represented other defendants who were responsible for
commingled wastes at the injection well. After considering the above facts, isolating
the defense costs related to Waste Materials, and assigning Shell an appropriate
percentage of these defense costs on an annual basis, Evanick concluded that Shell
owed Du Pont, under its indemnity agreement, defense costs (including reasonable
attorney’s fees) and settlement costs in the amount of $498,212.60. 
          Shell complains that Evanick’s affidavits are conclusory, constitute
inadmissible hearsay, improperly attempt to invade the province of the jury “to rule
on the unambiguous contractual indemnity provision at issue,” and, thus, are
incompetent and inadmissible summary judgment evidence. Shell claims that, in his
third affidavit, Evanick could show only that approximately $30,000 of Du Pont’s
defense costs “actually related” to Waste Materials. We note first, with the majority
of these “evidentiary” complaints, Shell simply recasts its contention that it should
only be liable for defense costs solely related to Waste Materials. We have rejected
this contention. Second, Evanick’s affidavits are not conclusory. The term
“conclusory” is defined as “[e]xpressing a factual inference without stating the
underlying facts on which the inference is based.” Black’s Law Dictionary 284
(7th ed. 2001); see also Interconex, Inc. v. Ugarov, 224 S.W.3d 523, 532 n.2 (Tex.
App.—Houston [1st Dist.] 2007, no pet). Evanick testified that he based his affidavit
on his personal knowledge, he had personally reviewed all invoices and fee and cost
entries, and he isolated the defense costs that related to Waste Materials. Evanick
attached to his affidavit all invoices for legal services performed and defense costs
incurred. Evanick explained that the majority of the defense costs expended in
defending claims related to Waste Materials could not be segregated from the costs
expended in defending claims related to non-Waste Materials, the defense costs
related to the general defense of the underlying action, and such costs included
preparing for and attending depositions of fact witnesses and experts. Evanick also
stated that the plaintiffs and defendants in the underlying litigation asserted common
claims and defenses and that the defendants in the underlying litigation formed a joint
defense group to present a uniform defense. Evanick then provided a detailed
analysis of how he allocated certain percentages of the defense costs to Shell. 
          We hold that the trial court erred in granting Shell’s summary judgment motion
and denying Du Pont’s summary judgment motion because Du Pont conclusively
established that it incurred over one million dollars in defense costs related to Waste
Materials, Du Pont properly sought a percentage of these defense costs from Shell,
and Shell owed Du Pont an allocated portion of defense costs in the amount of 
$498,212.60 (including $40,000 in allocable settlement costs).
          We sustain Du Pont’s first and second issues.



Indemnification for Settlement Costs
          In its third issue, Du Pont contends that the trial court should have awarded it
“a share of the settlement funds it paid to resolve ‘Claims related to Waste
Materials.’” In response, Shell asserts that Du Pont never produced any competent
summary judgment evidence that the settlement was related to Waste Materials.
          For a settling indemnitee to recover an amount of the settlement from its
indemnitor, the indemnitee must show its potential liability to a claimant and show
that the settlement was reasonable, prudent, and made in good faith under the
circumstances. Amerada Hess Corp. v. Wood Group Prod. Tech., 30 S.W.3d 5, 11
(Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing Fireman’s Fund Ins. Co.
v. Commercial Standard Ins. Co., 490 S.W.2d 818, 824 (Tex. 1972), overruled on
other grounds by Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex.
1987)); see also XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd., 426 F. Supp.
2d 565, 577–78 (S.D. Tex. 2006). 
          Here, although Shell has not challenged the reasonableness or good faith of Du
Pont’s settlement, we conclude that Evanick’s affidavits provide undisputed evidence
that Du Pont settled claims related to Waste Material; the settlement was prudent,
reasonable, and substantially less than the costs of a continued defense; and the
settlement was made in good faith. Shell’s real complaint in this issue, and
throughout this appeal, is that because it is responsible only for defense costs incurred
in defending claims solely related to Waste Materials ($31,000), it is not responsible
for any portion of Du Pont’s settlement costs. However, having rejected Shell’s
contention, we hold that the trial court erred in granting Shell’s summary judgment
motion and denying Du Pont’s summary judgment motion because Du Pont
conclusively established that its settlement costs related to Waste Materials, it
properly sought a reasonable percentage of these settlement costs from Shell, and
Shell owed it an allocated portion of settlement costs in the amount of $40,000.
          We sustain Du Pont’s third issue. 
Recovery of Costs for Indemnity Action
          In its fourth issue, Du Pont contends that the trial court should have awarded
it “defense costs for its prosecution of its indemnity claim.”
          Here, Du Pont presented undisputed evidence that it sustained $242,620.90 in
“attorney’s fees and costs” in prosecuting its indemnity claim against Shell. Shell
does not challenge the reasonableness or necessity of the amount of fees or costs, or
even Du Pont’s entitlement to recover these fees and costs upon Shell’s breach of the
indemnity provisions. Rather, it claims that Du Pont is not entitled to these fees and
costs because it was not entitled to indemnity for fees and costs except those solely
related to the Waste Materials. Shell asserts that it had already agreed to pay Du Pont
this amount—$31,000. Having rejected Shell’s contention, and having held that the
trial court erred in granting Shell’s summary judgment and in denying Du Pont
summary judgment on its claim for defense and settlement costs related to Waste
Materials, we further hold that the trial court erred in denying Du Pont summary
judgment on Du Pont’s claim for fees and costs in prosecuting its indemnity claim. 
We further hold that Du Pont has conclusively established that it is entitled to recover
its fees and costs for prosecution of its indemnity claim in the amount of $242,620.90. 
See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon Supp. 2006) (providing
for recovery of reasonable attorney’s fees, in addition to amount of damages and
costs, for prevailing party on breach of contract action); see also Devon SFS
Operating, Inc., 2006 WL 374257, at *11 (citing section 38.001 in affirming award
of contractually authorized fees, expenses, and costs to prevailing party in indemnity
action).
          We sustain Du Pont’s fourth issue.       
Conclusion
          We reverse the judgment of the trial court in favor of Shell. We render
judgment in favor of Du Pont in the amount of $458,212.60 in defense costs and
$40,000 in settlement costs, for a total of $498,212.60 in allocated defense and
settlement costs. We further render judgment in favor of Du Pont in the amount of
$242,620.90 for fees and costs expended in prosecuting its indemnity claim against
Shell. We further render judgment in favor of Du Pont in the amount of $25,000 in
fees and costs incurred in bringing this appeal. Finally, we render judgment in favor
of Du Pont in the amount of $15,000 in fees and costs should Shell unsuccessfully
appeal this matter to the Texas Supreme Court. 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.