**Walter F. CROWDER, Appellant,**

v.

**W. Russell SCHEIRMAN & Jolyn W. Scheirman, Appellees.**

**No. 01–04–00173–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 23, 2005.

James R. Watkins, Royston, Rayzor, Vickery & Williams, L.L.P., Galveston, TX, Kathleen Buchanan and Nathan Wesely, Royston, Rayzor, Vickery & Williams, L.L.P., Houston, TX, for Appellant.

Robert A. Axelrad, Zimmerman, Axelrad, Meyer, Stern & Wise, P.C., Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Walter F. Crowder, appeals from a no-evidence summary judgment rendered in favor of appellees, W. Russell Scheirman & Jolyn W. Scheirman (the Scheirmans). In his sole issue on appeal, Crowder asserts that the trial court erred in granting the no-evidence summary judgment on his breach of contract claim.

We affirm.

## Background

In November 1999, the Scheirmans signed a stock-purchase agreement with Crowder to sell him their home healthcare business, Ultrastaff Home Health Services, Inc. (Ultrastaff). Ultrastaff is a Medicare provider that receives reimbursement from Medicare. The stock purchase agreement between the Scheirmans and Crowder contained an indemnity clause that provided, "[The Scheirmans] hereby indemnify [Crowder] ... [for] any third party claims ... relating to any act or omission by [the Scheirman's] relating to the Company prior to the Effective Date that results in a civil or criminal false claim or fraud determination."

Six months after the sale and pursuant to federal regulations, Ultrastaff prepared and submitted a cost report to the Center for Medicare Services (CMS), the administrator for Medicare. Palmetto GBA, a fiscal intermediary for the Health Care Financing Administration (HCFA), audited Ultrastaff's cost report. Based on that audit, CMS determined that Medicare had overpaid Ultrastaff by $361,681 and issued a Notice of Program Reimbursement, seeking the overpayment from Ultrastaff.

Ultrastaff agreed to pay CMS over time, and Crowder demanded indemnity from the Scheirmans.

When the Scheirmans refused to indemnify him, Crowder filed a breach of contract claim against them based on the indemnity provision. On December 8, 2003, the Scheirmans filed a no-evidence motion for partial summary judgment on Crowder's indemnification claim. The Scheirmans argued that Crowder had presented (1) no evidence that three different conditions precedent to invoking the contractual indemnification provisions were satisfied; (2) no evidence that the limited trigger for the contractual indemnification, namely a "civil or criminal false claim or fraud determination," occurred; and (3) no evidence that an act by the Scheirmans resulted in any such determination.

On December 30, 2003, the trial court signed an order that granted the Scheirmans' partial summary judgment without stating its reasons. The parties nonsuited all remaining claims, thus making the judgment final. Crowder appeals from this order.

## Analysis

In one broad issue on appeal, Crowder argues that the trial court erred in granting the Scheirmans' no-evidence motion for summary judgment.

### Standard of Review

A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee,* 26 S.W.3d 526, 530 (Tex.App.-Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch,* 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)).

A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch,* 118 S.W.3d at 751. When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *See Havner,* 953 S.W.2d at 711. A defendant who moves for summary judgment need negate only one element of the plaintiff's cause of action. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

### Indemnity Agreement

■■■ Crowder filed suit against the Scheirmans for breach of contract, specifically, breach of the indemnity agreement. The elements of breach of contract include (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by

the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The supreme court requires that indemnity agreements be strictly construed to give effect to the parties' intent as expressed in the agreement. *Ideal Lease Serv. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1984). The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999).

■ The contract's indemnity provision is found in Paragraph 4.2. The provision provides:

(a) Sellers hereby indemnify Purchaser and his Affiliates against and agree to hold each of them harmless from any and all damage, loss, liability, Tax and expense (including, without limitation, reasonable expenses of investigation and reasonably attorneys' fees and expenses in connection with any action, suit or proceeding) (collectively "Losses") incurred or suffered by Purchaser or any of his Affiliates arising out of (i) any misrepresentation (whether or not intentional) or breach of warranty, covenant or agreement made or to be performed by Sellers pursuant to this Agreement, and (ii) *any third party claims, whether asserted before or after the Effective Date, relating to any act or omission by Sellers relating to the Company prior to the Effective Date that results in a civil or criminal false claim or fraud determination; provided, that* Sellers' liability for such indemnification in respect of Loss-

es arising under clause (i) of this paragraph shall not exceed Twenty Four Thousand and No/Dollars ($24,000.00). (Emphasis added).

The Scheirmans argued to the trial court and on appeal that Crowder presented no evidence that a civil or criminal false claim or fraud determination occurred-a necessary prerequisite to Crowder's recovery of indemnification from the Scheirmans. Crowder provided a one paragraph response. In that paragraph, Crowder failed to provide any evidence that a false claim or fraud determination occurred. Rather, he contended,

The indemnification language is expansive—civil and criminal liability does not exclude administrative decisions. Indeed, if the parties intended to limit civil liability to claims under the False Claims Act, the Agreement could have been so written. Instead, the common sense, plain language, reading of the Agreement is that a civil finding of fraud triggers the indemnification provision. If the facts at hand—submission of expenses to Medicare for which the Scheirmans were paid but as to which the fiscal intermediary found no substantiation—do not trigger the indemnification provision, it is difficult to imagine conduct that would trigger the indemnification provision. The Scheirmans' interpretation of the indemnification provision would render it a nullity.

■ Crowder's interpretation of the indemnification provision is not evidence. The provision clearly requires an act by the Scheirmans that results in a civil or criminal false claim or fraud determination.[1]

---

1. The evidence in the record that comes closest to providing more than a scintilla of evidence that a false claim or fraud determination occurred is in the affidavit of Kirby

Bubenik, Crowder's chief financial officer. In paragraph six of his affidavit, Bubenik stated that "[CMS] determined that certain expenses filed in connection with the Scheir-

A determination that someone has submitted a false claim is not the same as a notice seeking reimbursement for overpayment. The False Claims Act is a federal statute that applies to the submission of claims for payment under various federal statutes, including Medicare. *See* 31 U.S.C. § 3729 (2000). It provides liability for any person who (1) "[k]nowingly presents, or causes to be presented, to . . . the United States Government . . . a false or fraudulent claim for payment or approval" or who (2) "[k]nowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." *Id.* § 3729(a)-(b). Actions may be brought either by the United States Attorney General or a private citizen in the name of the United States through a *qui tam* action. 31 U.S.C. § 3730(a)-(c). The United States must prove all essential elements of the cause of action by a preponderance of the evidence. *See id.* § 3731(c). Here, Crowder presented no evidence that any such action was brought, much less decided against Ultrastaff, as a result of any act or omission of the Scheirmans. Crowder does not refer us to any other evidence that shows that a false claim or fraud determination occurred. In fact, in his response to the Scheirmans' motion for summary judgment, Crowder admits that the facts are generally undisputed.

We also note that, on appeal, Crowder and the Scheirmans cite to a number of regulations that govern CMS and Medi-

care reimbursements. One section, in particular, bolsters our conclusion that Crowder did not produce any evidence of a false claim or fraud determination. Section 401.601(f) of the regulations, which discusses fraud in claims collections, states,

> The regulations in this subpart do not apply to claims in which there is an indication of fraud, the presentation of a false claim, or misrepresentation on the part of a debtor or any other party having an interest in the claim. CMS forwards these claims to the Department of Justice for disposition under 4 CFR 105.1.

42 C.F.R. § 401.601(f). Under this section, if CMS had determined that there was an indication of a false claim or fraud, the claim would have been forwarded to the Department of Justice for disposition. *See id.* There is no evidence that this happened. Rather, the evidence supports the Scheirmans' contention that CMS sought only administrative recoupment, and not that Ultrastaff was found liable for making a false or fraudulent claim as result of the Scheirmans' act or omission.

Accordingly, we conclude that Crowder has failed to present more than a scintilla of evidence of any third party claim relating to any act or omission by the Scheirmans "that result[ed] in a civil or criminal false claim or fraud determination," as required to trigger the indemnification clause.

mans' operation of Ultrastaff were false claims, and recoupment of such expenses by the CMS was required." However, the Scheirmans objected to paragraph six of Bubenik's affidavit. By order dated December 30, 2003, the trial court sustained most of the Scheirmans' objections to Bubenik's affidavit, including paragraph six. The trial court also sustained an objection to the entirety of Bubenik's affidavit because his per-

sonal knowledge was not established. Not until Crowder's reply brief, did he assign error to the trial court's action in granting the Scheirmans' objections to Bubenik's affidavit. A party may not raise new issues for the first time on appeal in a reply brief. *See Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

We overrule Crowder's sole issue.[2]

**Conclusion**

We affirm the judgment of the trial court.

2. In his reply brief, Crowder asks us to consider whether the trial court abused its discretion or committed clear error in a number of evidentiary and procedural grounds should we determine that we could not consider his sole issue on appeal. We decline to address these arguments because we have considered Crowder's issue, and Crowder cannot raise new issues for the first time on appeal in his reply brief. *See Zamarron,* 125 S.W.3d at 139.