E.I. DU PONT DE NEMOURS AND COMPANY, Appellant,

v.

SHELL OIL COMPANY, Appellee.

No. 01–07–00118–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 15, 2007.

Rehearing Overruled March 28, 2008.

Charles T. Miers, Abbott, Simses & Kuchler, APLC, Houston, TX, for Appellant.

Richard A. Stewart, Daryl G. Dursum, Adams and Reese, LLP, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

TERRY JENNINGS, Justice.

Appellant, E.I. Du Pont De Nemours and Company ("Du Pont"), challenges the trial court's rendition of summary judgment[1] in favor of appellee, Shell Oil Company ("Shell"), in Du Pont's suit against Shell for breach of an indemnification agreement. In four issues, Du Pont contends that Shell owed Du Pont a duty to indemnify it for "defense costs that advanced both [ ] the defense of Shell related to Waste Materials and [ ] the defense of Du Pont (or another defendant) related to waste from another facility"; Du Pont properly allocated a percentage of these "defense costs" to Shell; Du Pont properly segregated the defense costs "that did not relate to the defense of Waste Materials" from the remainder of the defense costs that did relate to Waste Materials; Shell owed Du Pont a duty to indemnify it for "a share of the settlement funds it paid to resolve 'Claims related to Waste Materials' "; and the trial court should have awarded it "defense costs for its prosecution of its indemnity claim."

We reverse and render.

### Factual and Procedural Background

Pursuant to a Detergents Toll Conversion Agreement ("DTCA"), Du Pont manufactured Shop Ligand, a chemical, at a facility in Mobile, Alabama, using Shell's raw materials and for Shell's use. Under the DTCA, Shell retained ownership of the wastes and waste by-products from the Shop Ligand production process, referred to by the parties in the DTCA as the "Waste Materials." Moreover, Shell designated the transporter and the disposal site of the Waste Materials and reimbursed Du Pont for transportation and disposal costs. Finally, article 15 of the DTCA contained two indemnity provisions,

which generally provided that Shell would "defend and indemnify Du Pont … against all Claims related to Waste Materials."

Du Pont shipped over 12 million pounds of Waste Materials to an injection well in Bayou Sorrell, Louisiana. The injection well subsequently became the subject of multiple lawsuits ultimately consolidated into a class action suit in federal district court. Du Pont and Shell, as well as hundreds of other defendants, were sued in this underlying litigation for their roles in generating and disposing of wastes at the injection well. The plaintiffs in the underlying litigation did not identify any particular defendant as responsible for any specific waste. Rather, the plaintiffs alleged that all of the defendants' wastes commingled at the site and these commingled wastes collectively harmed them.

All parties agree that Shell and Du Pont were sued, in part, for their roles in generating and transporting Waste Materials to the injection well; both Shell and Du Pont were also sued for claims unrelated to Waste Materials. Du Pont was sued for shipping to the injection well (1) the Waste Materials and (2) 7.6 million pounds of waste from its "Pontchartrain Facility" in La Place, Louisiana.

After being sued, Du Pont requested that Shell, pursuant to the DTCA, provide it a defense and indemnity in the underlying litigation. Although Du Pont requested a response within 30 days, Shell responded to this demand over one year later. Shell recognized its "responsibility" for the Waste Materials, but denied responsibility for waste from other facilities. Shell stated that it would not "defend or indemnify any judgment against Du Pont for other wastes" and offered Du Pont a limited indemnity, conditioned upon Du

---

1. See Tex.R. Civ. P. 166a(c).

Pont's waiving its right to recover settlement payments if the plaintiffs and defendants in the underlying litigation accomplished an "early settlement." Shell also indicated that it was unwilling to reimburse Du Pont for any defense costs expended prior to Shell's offer. Du Pont rejected Shell's conditional indemnity and continued its defense.

The plaintiffs and defendants eventually settled the underlying litigation. Thereafter, Shell sent Du Pont another letter stating that it intended to indemnify Du Pont only for shipments of Waste Materials. Shell asserted that the parties needed to "determine how to split out those costs *solely* related to the waste shipped from [the Mobile Facility] on [Shell's] behalf." (Emphasis added.) Shell requested that Du Pont submit its costs with supporting documentation, and, in December 2004, Du Pont sent Shell a letter breaking down its annual defense costs. Du Pont then requested that Shell pay (1) a percentage of defense costs that related to both Waste Materials and non-Waste Materials and (2) $31,000 in costs that solely related to Waste Materials for which Shell was "solely responsible." Shell refused to pay any amounts other than the $31,000 in defense costs solely related to Waste Materials.

Du Pont filed suit, asserting that Shell breached its duty to defend and indemnify it in the underlying litigation. Shell answered, and filed a motion for partial summary judgment, seeking a declaration that it owed Du Pont indemnity "only for defense costs *directly* related" to Waste Materials, and not a percentage of costs incurred by Du Pont "in its overall defense." (Emphasis added.) The trial court granted Shell partial summary judgment, but in its order it simply tracked the language of the DTCA, declaring that Shell was required to indemnify Du Pont for "defense costs and settlement funds per [s]ection 15 of the [DTCA] incurred by Du Pont which are related to the Waste Materials."

The parties then filed cross motions for summary judgment. In its summary judgment motion, Du Pont argued that the DTCA was unambiguous and required Shell to defend and indemnify Du Pont for the majority of defense costs expended in the underlying litigation because the defense costs "related to" Waste Materials. Du Pont attached to its motion the affidavit of Bruce Evanick, Du Pont's counsel, and Du Pont later filed several supplemental affidavits from Evanick. In these affidavits, Evanick explained that pursuant to the DTCA, Du Pont was seeking to recover from Shell (1) $498,212.60 in "reasonable and necessary defense costs (including attorney's fees and other defense costs)" and settlement costs, which represented only "an allocated portion" of its total defense and settlement costs related to Waste Materials and (2) $224,620.90 for "attorney's fees and costs" incurred in prosecuting its indemnity claim against Shell.

In regard to Du Pont's claim for defense and settlement costs of the underlying litigation, Evanick agreed that, in addition to representing Du Pont for disposing 12 million pounds of Waste Materials into the injection well, his firm had also represented Du Pont for disposing 7.6 million pounds of Pontchartrain Facility wastes into the well. Evanick further agreed that, at times during the underlying litigation, his firm represented two other defendants responsible for commingled wastes at the injection well. In determining the amount of defense costs properly chargeable to Shell, Evanick explained that he first identified defense costs "that did not relate to Waste Materials," i.e., those defense costs that solely related to the Pontchartrain Facility wastes or wastes generated by the other represented defen-

dants. Du Pont did not seek any of these defense costs from Shell. Next, Evanick identified defense costs for which Shell was solely responsible. Du Pont sought to recover 100% of these defense costs from Shell. Evanick explained, for example, that these defense costs included costs associated with reviewing documents that related only to the Mobile Facility. Evanick was then left with a remaining pool of defense costs that were "impossible" to segregate or assign either as solely related to Waste Materials or non-Waste Materials, i.e., claims related to Pontchartrain Facility wastes and wastes generated by other represented defendants. Evanick explained that attributing these defense costs in such a manner was impossible because of the commingling of all of the defendants' wastes at the injection well, the common claims asserted by the plaintiffs, and the common defenses raised by the defendants. Thus, Evanick opined that all of these remaining defense costs "related to" Waste Materials, even if they also related to non-Waste Materials. In support of this opinion, Evanick stated that, even if Du Pont had been sued only in regard to the Waste Materials, Du Pont still would have incurred all of the remaining pool of defense costs because he still would have performed all of the underlying legal services in defense of these claims on Du Pont's behalf. As such, Evanick contended that Shell was contractually responsible for all of these defense costs related to Waste Materials, which amounted to over one million dollars, under the indemnity agreement.

Nevertheless, Evanick stated that because his firm also represented Du Pont and, at times, other defendants in regard to commingled wastes, and because Du Pont, Shell, and these other defendants all benefitted from these defense costs, Du Pont sought from Shell only a prorated share of these costs.[2] Evanick explained, in considerable detail, the method he used to determine the appropriate pro rated share that was charged to Shell.[3] Specifically, after setting aside the defense costs unrelated to Waste Materials as well as defense costs solely related to Waste Materials, Evanick set forth the total annual defense costs incurred in defense of claims related to Waste Materials, detailed the time periods for which he also represented parties other than Shell in regard to non-Waste Materials, assigned a percentage of defense costs based on these factors related to Waste Materials for which Shell would be responsible, and calculated the reasonable amount of these costs allocable to Shell for each year. Evanick also calculated, based on these factors, a percentage

---

**2.** Evanick explained that he also considered the Texas Disciplinary Rules of Professional Conduct in determining and allocating the **defense** costs. *See* Tex. Discp. R. Prof'l Conduct 1.04(b).

**3.** Evanick testified in his original affidavit,

The majority of legal fees and costs incurred defending Claims related to Waste Materials from the [Mobile] Facility cannot be segregated from legal fees and costs related to waste materials transported from DuPont's [Pontchartrain] [F]acility, and waste materials related to one or more additional defendants [my firm] began representing. These fees and costs relate to the general defense of the Underlying Actions and include such things as preparing for and attending plaintiffs' and fact witnesses' depositions, preparing and deposing expert witness[es], and other general litigation tasks. If [my firm] only defended Claims related to Waste Materials from the [Mobile] [F]acility all of the tasks for which DuPont is seeking to recover defense costs would have been performed and all of the fees would have been incurred and reasonable. However, since [my firm] not only defended against Claims related to the Waste Material from the [Mobile] [F]acility, but also represented the interests of DuPont and one or more additional defendants, a reasonable and equal allocation of the fees and costs was made.

of the settlement costs for which Shell was responsible. In sum, Evanick stated that Shell was responsible for $458,212.60 in defense costs and $40,000 in settlement costs for a total of $498,212.60 in allocated defense and settlement costs.

In its summary judgment motion, Shell reiterated its position that it was responsible only for "costs *actually* related to wastes from the Mobile Facility" in the amount of $31,000.

In its final judgment, the trial court overruled Shell's objections to Du Pont's summary judgment evidence. However, after finding that there were no contested issues of material fact, the trial court denied Du Pont's summary judgment motion "except as to $31,00 in damages," and granted Shell summary judgment "as to defenses and denied as to claims for affirmative relief."

### Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004). A court should construe an unambiguous contract as a matter of law, and, on appeal, the court's ruling is subject to de novo review. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003); *MEMC Elec. Materials, Inc. v. Albemarle Corp.*, 241 S.W.3d 67, 70–71 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

### Indemnification for Defense Costs

In its first and second issues, Du Pont contends that Shell owed Du Pont a duty to indemnify it for "defense costs that advanced both [ ] the defense of Shell related to Waste Materials and [ ] the defense of Du Pont (or another defendant) related to waste from another facility"; Du Pont properly allocated a percentage of these "defense costs" to Shell; and Du Pont properly segregated the defense costs "that did not relate to the defense of Waste Materials" from the remainder of the defense costs that did relate to Waste Materials.

Indemnity agreements must be strictly construed, pursuant to the usual principles of contract interpretation, in order to give effect to the parties' intent as expressed in the agreement. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000); *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952–53 (Tex.1983); *Crowder v. Scheirman*, 186 S.W.3d 116, 119 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We must give terms in an indemnity agreement their plain, ordinary, and generally accepted meaning. *Lehmann v. Har–Con Corp.*, 76 S.W.3d 555, 562 (Tex.App.-Houston [14th Dist.] 2002, no pet.). An indemnity agreement is unambiguous if it can be given a definite or certain legal meaning, and we will construe an unambiguous indemnity agreement as a matter of law. *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

Here, the DTCA provided, in relevant part,

Section 15.2 [Shell] shall defend and indemnify Du Pont ... against all claims, suits, actions, liabilities, losses and expenses (including reasonable attorney's fees) including but not limited to injury, disease, or death of persons or damage to property including environmental damage (hereinafter referred to

as "Claims") *related to* the materials....

Section 15.4 [Shell] shall defend and indemnify Du Pont ... against all Claims *related to* Waste Materials.... (Emphasis added.)

Both parties agree that the indemnity provisions are unambiguous. However, the parties seek opposing constructions of the indemnity provisions based on the term "related to." Du Pont asserts that the indemnity provisions mean exactly what they say, i.e., that Shell owed Du Pont indemnity for costs for claims *related to* Waste Materials. Shell, on the other hand, contends that the plain meaning of the indemnity provisions "leaves no doubt that Shell owed Du Pont indemnity only for costs that were *actually related to*" the Waste Materials. Similarly, in its pre-litigation correspondence, trial court pleadings, and partial summary judgment motion, Shell asserted that its indemnity obligations applied only to defense costs *"directly attributable," "solely related to," "specifically related to,"* or *"directly related to"* the Waste Materials.

■ Our focus is on determining the intent of the parties as expressed in the agreement. *Crowder,* 186 S.W.3d at 119. The DTCA defines "claims" to include "all claims, suits, actions, liabilities, losses and expenses (including reasonable attorney's fees) including but not limited to injury, disease or death of persons or damage to property including environmental damage." The term "related to" means to "have reference to" or "concern." THE NEW OXFORD AMERICAN DICTIONARY 1437 (2001); *see also Univ. of Tex. Law School v. Tex. Legal Found.,* 958 S.W.2d 479, 483 (Tex.App.-Austin 1997, no pet.) ("Ordinarily, the words 'related to' mean 'pertaining to,' 'associated with,' or 'connected with.' ") (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1916 (Philip E. Gove ed.1986); BLACK'S LAW DICTIONARY 1288 (6th ed.1990)). Here, the plaintiffs in the underlying litigation alleged that they were harmed by commingled wastes shipped to the injection well by hundreds of defendants, including Du Pont. Du Pont was sued, in part, for its shipment of Waste Materials to the well. Thus, the plaintiffs' claims against Du Pont, and the defense costs expended to defend Du Pont in regard to these claims, related to Waste Materials and triggered Shell's indemnity obligations.

While Shell appears to agree with this general proposition, it proposes a construction of the indemnity provisions that is contrary to the provisions' plain terms, rendering Shell's indemnity obligations, at least under these circumstances, virtually worthless. Shell sought, and effectively obtained, a summary judgment on the basis that it owed Du Pont indemnity only for defense costs *solely* related to Waste Materials. Yet, this qualifying terminology is nowhere in the indemnity agreement. Here, although Du Pont was sued both for the disposing of Waste Materials and non-Waste Materials into the well, it is undisputed that these wastes were commingled in the well and were alleged to have collectively harmed the plaintiffs. Du Pont presented undisputed evidence that there was (1) a small amount of segregable defense costs that did not relate to the Waste Materials (for which it did not seek to recover), (2) a small amount of segregable defense costs solely related to Waste Materials (for which it sought to fully recover), and (3) a remaining pool of defense costs that Du Pont would have expended even if it had only been sued in regard to the Waste Materials (rendering the claims and the costs associated with defending these claims necessarily related to Waste Materials). Under the plain terms of the DTCA, Shell was not merely responsible for the minimal amount of defense costs solely related to Waste Materials. We

enforce the DTCA as written, reject Shell's assertion that it is liable only for defense costs in the amount of $31,000 *solely related* to Waste Materials, and hold that Shell was contractually required to indemnify Du Pont for defense costs expended in defense of the claims related to Waste Materials, even if those costs also benefitted the defense of claims related to non-Waste Materials. *See Lehmann,* 76 S.W.3d at 561–62 (construing indemnity provision to provide common sense reading and giving terms in indemnity agreement plain, ordinary, and generally accepted meaning).

Although Du Pont presented undisputed evidence that it expended approximately one million dollars in costs that advanced the defense of claims related to both Waste and non-Waste Materials, Du Pont did not seek to recover all of these costs. Rather, because these defense costs related both to Waste Materials and non-Waste Materials and, accordingly, benefitted multiple parties, Du Pont sought an allocated portion of these defense costs from Shell in the amount of $498,212.60 (including $40,000 in allocated settlement costs).

Both parties cite *Tony Gullo Motors I, L.P. v. Chapa,* as controlling authority on the issue of segregation. 212 S.W.3d 299 (Tex.2006). In *Tony Gullo Motors,* Chapa, the plaintiff, asserted claims for breach of contract, violations of the Deceptive Trade Practices Act, and fraud. *Id.* at 303. The jury awarded Chapa $20,000 in attorney's fees "in this case," and Tony Gullo Motors objected on the basis that attorney's fees were not recoverable on Chapa's fraud claim. *Id.* at 310. Noting that "fee claimants have always been required to segre-

gate fees between claims for which they are recoverable and claims for which they are not," the court sought to rein in an exception that it had previously recognized for "inextricably intertwined" fees. *Id.* at 311 (citing *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991)). Finding that this "inextricably intertwined" exception had been difficult to consistently apply and had flooded courts with claims for otherwise unrecoverable fees, the supreme court explained that to the extent it suggested in *Sterling* "that a common set of underlying facts necessarily made all claims arising therefrom 'inseparable' and all legal fees recoverable, it went too far." *Id.* at 313.

The court "reaffirm[ed] the rule that if any attorney's fees *relate solely* to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* (emphasis added).[4] But the court also noted that,

> [M]any if not most legal fees in such cases *cannot and need not be precisely allocated to one claim or the other.* Many of the services involved in preparing a contract or DTPA claim for trial *must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable.* Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services *may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim*

4. The court stated that the standard "does not require more precise proof for attorney's fees than for any other claims or expenses," "Chapa's attorneys did not have to keep separate time records when drafting the fraud, contract, or DTPA paragraphs of her petition,"

and "an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim." *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 314 (Tex.2006).

*alone, they are not disallowed simply because they do double service.*

*Id.* (emphasis added).

*Tony Gullo Motors,* although distinguishable from the instant case because Du Pont is not seeking to recover intertwined fees on separate, nonrecoverable claims, supports Du Pont's indemnification request for defense costs expended to defend Claims that relate to Waste Materials, even if such costs do not *solely relate* to Waste Materials. In *Tony Gullo Motors,* the court confirmed that "it is only *when discrete legal services* advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14 (emphasis added). Similarly, here, Du Pont presented undisputed evidence that, based on the commonality of the claims and defenses and the commingling of the Waste Materials with the non-Waste Materials, even if Du Pont had been sued only in regard to Waste Materials, Du Pont would have incurred defense costs for the same discrete legal services for which it sought recovery from Shell. Because the discrete legal services provided to Du Pont for which it seeks recovery advanced both Du Pont's defense for claims related to Waste Materials as well as claims related to non-Waste Materials, *Tony Gullo Motors* supports Du Pont's claims for recovery of the requested defense costs fees from Shell.[5]

This Court has recently discussed a similar issue in regard to segregation in *Devon SFS Operating, Inc. v. First Seismic Corp.,* No. 01–04–00077–CV, 2006 WL 374257, at *14 (Tex.App.-Houston [1st Dist.] Feb. 16, 2006, no pet.) (mem.op.). In *Devon SFS Operating, Inc.,* an indemnity action, the appellant complained that the amount of attorney's fees and costs awarded to the appellee included amounts "attributable solely to defending" a third party for whom recovery of fees and costs was not authorized under the relevant agreement. *Id.* We noted, however, that the trial court's record actually reflected that the fees and costs directly allocable to the third party had been "promptly identified, segregated and noted as nonrecoverable." *Id.* We further noted that, in response to the appellant's complaints in the trial court, the appellee had proportionately reduced the claimed amounts of attorney's fees and costs based on "percentages of time allocable to [the] defense" of this third party. *Id.* Finally, and most similar to the instant case, we noted that although the appellee had proportionately reduced the amount of requested fees and costs, it had not made any proportionate reduction for fees and costs that it *"would have incurred in any event* because [the claimed fees] related" not only to the defense of the party (for whom recovery of fees and costs was not authorized) but also to its defense (for which recovery of fees and costs was authorized). *Id.* (emphasis added). We affirmed the award, stating that the appellant had not refuted the evidence that all of the claimed fees and costs were "integral to" the appellee's defense, even though some of the fees and costs also related to the defense of the third party for whom recovery of such costs was not authorized. *Id.*

As in *Devon SFS Operating, Inc.,* here, the record establishes that Du Pont segregated defense costs expended in defense of claims solely related to non-Waste Materials—including any such defense costs solely related to the defense of claims related to Pontchartrain Facility waste and wastes

---

5. In accord with the principles set forth in *Tony Gullo Motors,* we note that Du Pont did segregate those defense costs that solely related to non-Waste Materials, and Du Pont has not, and could not, seek the recovery of these defense costs, even though some of these costs were likely based on "intertwined facts." *See id.*

generated by the other represented defendants. Du Pont also segregated a limited amount of fees expended to defend claims solely related to Waste Materials. Du Pont was then left with a remaining pool of defense costs that related to Waste Materials, even though such defense costs also advanced the defense of claims related to non-Waste Materials. Again, although Du Pont might have been entitled to seek recovery of these defense costs under the plain terms of the agreement, Du Pont instead sought a percentage of these defense costs after analyzing the time periods for which Evanick's firm represented Du Pont's interest in regard to the 7.6 million pounds of non-Waste Materials as well as the time periods Evanick's firm represented other defendants who were responsible for commingled wastes at the injection well. After considering the above facts, isolating the defense costs related to Waste Materials, and assigning Shell an appropriate percentage of these defense costs on an annual basis, Evanick concluded that Shell owed Du Pont, under its indemnity agreement, defense costs (including reasonable attorney's fees) and settlement costs in the amount of $498,212.60.

■ Shell complains that Evanick's affidavits are conclusory, constitute inadmissible hearsay, improperly attempt to invade the province of the jury "to rule on the unambiguous contractual indemnity provision at issue," and, thus, are incompetent and inadmissible summary judgment evidence. Shell claims that, in his third affidavit, Evanick could show only that approximately $30,000 of Du Pont's defense costs "actually related" to Waste Materials. We note first, with the majority of these "evidentiary" complaints, Shell simply recasts its contention that it should only be liable for defense costs solely related to Waste Materials. We have rejected this contention. Second, Evanick's affidavits are not conclusory. The term "conclu-

sory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." BLACK'S LAW DICTIONARY 284 (7th ed.2001); see also Interconex, Inc. v. Ugarov, 224 S.W.3d 523, 532 n. 2 (Tex.App.-Houston [1st Dist.] 2007, no pet). Evanick testified that he based his affidavit on his personal knowledge, he had personally reviewed all invoices and fee and cost entries, and he isolated the defense costs that related to Waste Materials. Evanick attached to his affidavit all invoices for legal services performed and defense costs incurred. Evanick explained that the majority of the defense costs expended in defending claims related to Waste Materials could not be segregated from the costs expended in defending claims related to non-Waste Materials, the defense costs related to the general defense of the underlying action, and such costs included preparing for and attending depositions of fact witnesses and experts. Evanick also stated that the plaintiffs and defendants in the underlying litigation asserted common claims and defenses and that the defendants in the underlying litigation formed a joint defense group to present a uniform defense. Evanick then provided a detailed analysis of how he allocated certain percentages of the defense costs to Shell.

We hold that the trial court erred in granting Shell's summary judgment motion and denying Du Pont's summary judgment motion because Du Pont conclusively established that it incurred over one million dollars in defense costs related to Waste Materials, Du Pont properly sought a percentage of these defense costs from Shell, and Shell owed Du Pont an allocated portion of defense costs in the amount of $498,212.60 (including $40,000 in allocable settlement costs).

We sustain Du Pont's first and second

issues.[6]

## Indemnification for Settlement Costs

In its third issue, Du Pont contends that the trial court should have awarded it "a share of the settlement funds it paid to resolve 'Claims related to Waste Materials.'" In response, Shell asserts that Du Pont never produced any competent summary judgment evidence that the settlement was related to Waste Materials.

For a settling indemnitee to recover an amount of the settlement from its indemnitor, the indemnitee must show its potential liability to a claimant and show that the settlement was reasonable, prudent, and made in good faith under the circumstances. *Amerada Hess Corp. v. Wood Group Prod. Tech.*, 30 S.W.3d 5, 11 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (citing *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex.1972), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)); *see also XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 426 F.Supp.2d 565, 577–78 (S.D.Tex.2006).

Here, although Shell has not challenged the reasonableness or good faith of Du Pont's settlement, we conclude that Evanick's affidavits provide undisputed evidence that Du Pont settled claims related to Waste Material; the settlement was prudent, reasonable, and substantially less than the costs of a continued defense; and the settlement was made in good faith. Shell's real complaint in this issue, and throughout this appeal, is that because it is responsible only for defense costs incurred in defending claims solely related to Waste Materials ($31,000), it is not responsible for any portion of Du Pont's settlement costs. However, having rejected Shell's

contention, we hold that the trial court erred in granting Shell's summary judgment motion and denying Du Pont's summary judgment motion because Du Pont conclusively established that its settlement costs related to Waste Materials, it properly sought a reasonable percentage of these settlement costs from Shell, and Shell owed it an allocated portion of settlement costs in the amount of $40,000.

We sustain Du Pont's third issue.

## Recovery of Costs for Indemnity Action

In its fourth issue, Du Pont contends that the trial court should have awarded it "defense costs for its prosecution of its indemnity claim."

Here, Du Pont presented undisputed evidence that it sustained $242,620.90 in "attorney's fees and costs" in prosecuting its indemnity claim against Shell. Shell does not challenge the reasonableness or necessity of the amount of fees or costs, or even Du Pont's entitlement to recover these fees and costs upon Shell's breach of the indemnity provisions. Rather, it claims that Du Pont is not entitled to these fees and costs because it was not entitled to indemnity for fees and costs except those solely related to the Waste Materials. Shell asserts that it had already agreed to pay Du Pont this amount—$31,000. Having rejected Shell's contention, and having held that the trial court erred in granting Shell's summary judgment and in denying Du Pont summary judgment on its claim for defense and settlement costs related to Waste Materials, we further hold that the trial court erred in denying Du Pont summary judgment on Du Pont's claim for fees and costs in prosecuting its indemnity claim. We further hold that Du Pont has conclusively established that it is entitled

---

6. Shell has not asserted a challenge as to whether the defense costs were reasonable or necessary under *Arthur Andersen & Co. v.*

*Perry Equip. Corp.*, 945 S.W.2d 812, 819 (Tex. 1997).

to recover its fees and costs for prosecution of its indemnity claim in the amount of $242,620.90. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon Supp.2006) (providing for recovery of reasonable attorney's fees, in addition to amount of damages and costs, for prevailing party on breach of contract action); *see also Devon SFS Operating, Inc.*, 2006 WL 374257, at *11 (citing section 38.001 in affirming award of contractually authorized fees, expenses, and costs to prevailing party in indemnity action).

We sustain Du Pont's fourth issue.

### Conclusion

We reverse the judgment of the trial court in favor of Shell. We render judgment in favor of Du Pont in the amount of $458,212.60 in defense costs and $40,000 in settlement costs, for a total of $498,212.60 in allocated defense and settlement costs. We further render judgment in favor of Du Pont in the amount of $242,620.90 for fees and costs expended in prosecuting its indemnity claim against Shell. We further render judgment in favor of Du Pont in the amount of $25,000 in fees and costs incurred in bringing this appeal. Finally, we render judgment in favor of Du Pont in the amount of $15,000 in fees and costs should Shell unsuccessfully appeal this matter to the Texas Supreme Court.