**Reversed and Remanded and Majority and Dissenting Opinions filed March 19, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00644-CV

---

**GRANT PRIDECO, INC. AND AGGREGATE PLANT PRODUCTS CO., Appellants**

**V.**

**EMPEIRIA CONNER L.L.C., EMPEIRIA CONNER II L.L.C., AUBREY CONNER, LEGG MASON SBIC MEZZANINE FUND, L.P., AEA MEZZANINE FUND, L.P., AEA MEZZANINE (UNLEVERAGED) FUND, L.P., PAUL FRONTIER HOLDINGS, L.P., JOE FIAMINGO, WES DEHAVEN, ALEX SUAREZ, AND EMPEIRIA CONNER L.L.C., IN ITS CAPACITY AS THE SELLER REPRESENTATIVE, Appellees**

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2012-71176**

---

## M A J O R I T Y   O P I N I O N

The parties to this appeal dispute the meaning of a contractual indemnity provision. The trial judge granted summary judgment agreeing with appellees' interpretation. We agree with appellants' interpretation and, therefore, reverse.

Concluding, however, that appellants have not established as a matter of law that they are entitled to indemnification, we remand for further proceedings consistent with this opinion.

## *Background*

Empeiria Conner L.L.C., Empeiria Conner II L.L.C., Aubrey Conner, Legg Mason SBIC Mezzanine Fund, L.P., AEA Mezzanine Fund, L.P., AEA Mezzanine (Unleveraged) Fund, L.P., Paul Frontier Holdings, L.P., Joe Fiamingo, Wes Dehaven, Alex Suarez, and Empeiria Conner L.L.C., in its capacity as the seller representative (collectively, "Empeiria") and others entered into a Stock Purchase Agreement with Grant Prideco, Inc..[1] Under the Stock Purchase Agreement, Grant Prideco purchased all of the outstanding capital stock, warrants, and options of Conner Steel Products Holdings, Co., a company that owned all of the issued and outstanding capital stock of Conner Steel Products, Inc. The latter company owned all of the issued and outstanding capital stock of appellant Aggregate Plant Products Company (APPCO).

APPCO manufactures heavy equipment, including multi-sanders used in oil and gas operations. The Stock Purchase Agreement contains various indemnity provisions, including an agreement by Empeiria to indemnify Grant Prideco and others as to losses based upon, arising out of, or relating to certain products liability claims.[2] In March 2012, Jose Lara filed suit against APPCO and others in Winkler County, Texas, asserting various products liability claims allegedly arising out of severe injuries Lara suffered while working with a multi-sander allegedly manufactured, designed, marketed, and distributed by APPCO and others.

---

[1] For ease of reference, we refer to appellees in the singular.

[2] The indemnity provision at issue is section 10.2(c). *See infra* pp. 5-6.

Grant Prideco and APPCO (collectively, "Grant Prideco") sent a timely demand letter to Empeiria seeking indemnity from the claims, demands, and fees and costs of defense or settlement "arising out of or related to Mr. Lara's lawsuit."[3] Empeiria denied Grant Prideco's demand for indemnity, asserting that Lara's claims do not fall within the scope of any indemnity provision in the Stock Purchase Agreement. Grant Prideco filed suit against Empeiria, alleging that it breached its indemnity obligations under the Stock Purchase Agreement, and seeking "a declaration that [Grant Prideco is] entitled to recover all money held in escrow," contract damages, and attorney's fees.[4] Empeiria filed counterclaims seeking declaratory relief and attorney's fees.

Empeiria filed a traditional summary-judgment motion on the bases that "the underlying cause of action for negligence accrued after the sale of [APPCO]" and "[Empeiria is] not liable to indemnify [Grant Prideco] for claims arising after the sale."[5] Grant Prideco filed a motion for partial summary judgment, seeking a declaratory judgment that it is entitled to indemnity from Empeiria as to Lara's claims and for attorney's fees. The trial court granted in part and denied in part Empeiria's summary-judgment motion and denied Grant Prideco's motion for partial summary judgment. In its summary-judgment order, the trial court declared that "the facts, events, and circumstances with respect to [Lara's claims] did not arise prior to the Closing Date" and thus Empeiria is not required to indemnify

---

[3] As with appellees, we refer to appellants in the singular.

[4] In conjunction with the stock purchase, the parties entered into an Escrow Agreement. Pursuant to section 4 of the Escrow Agreement, an Escrow Fund of $9.5 million was established for the purpose of paying claims for indemnification. Empeiria claimed Grant Prideco breached the Escrow Agreement by failing to release funds.

[5] Grant Prideco brought only a breach of contract claim, but in its prayer sought the above-referenced declaration in addition to monetary damages. Empeiria moved for summary judgment as to Grant Prideco's breach claim but did not otherwise object to Grant Prideco's request for declaratory relief.

Grant Prideco under the Stock Purchase Agreement. The trial court denied Empeiria's request for attorney's fees.

## *Discussion*

In a single issue, Grant Prideco asserts that the trial court erred in granting Empeiria's summary-judgment motion and in denying its motion for partial summary judgment. Grant Prideco did not seek a final judgment. However, because Grant Prideco and Empeiria moved for summary judgment on the same issue (both seeking a declaration regarding whether Empeiria was required to indemnify Grant Prideco), we may review the trial court's denial of Grant Prideco's summary-judgment motion. *See FDIC v. Lenk*, 361 S.W.3d. 602, 611–12 (Tex. 2012); *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 659, 664 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish the movant's right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When, as in this case, the parties file competing motions for summary judgment, and the trial court grants one motion and denies the other, we may

4

consider the propriety of the denial as well as the grant. *See Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 729 (Tex. App.—Houston [14th Dist.] 2003, no pet.). If the issue raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *See id.* We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered. *See id.* If, however, resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we should reverse and remand for further proceedings. *See id.* at 729-30.

Grant Prideco argues that Lara's claims fall within the scope of the indemnity provision so that, as a matter of law, Empeiria must indemnify Grant Prideco as to these claims. Conversely, Empeiria argues that Lara's claims do not fall within the scope of that provision so that, as a matter of law, Empeiria has no obligation to indemnify Grant Prideco as to these claims. We construe indemnity agreements strictly under the usual principles of contract interpretation to give effect to the parties' intent as expressed in the agreement. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *E.I. Du Pont De Nemours & Co. v. Shell Oil Co.*, 259 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We must give terms in an indemnity agreement their plain, ordinary, and generally accepted meaning unless the agreement indicates otherwise. *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 562 (Tex. App.—Houston [14th Dist.] 2002, no pet.). An indemnity agreement is unambiguous if it can be given a definite or certain legal meaning, and we will construe an unambiguous indemnity agreement as a matter of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *E.I. Du Pont De Nemours & Co.*, 259 S.W.3d at 805.

The provision in question is section 10.2 of the Stock Purchase Agreement, which provides in pertinent part as follows:

5

**Section 10.2** <u>Indemnification by the Sellers</u>. Subject to the limitations set forth in this <u>Article X</u>, including without limitation <u>Section 10.7</u>, each Seller hereby (on a joint and several basis with the other Sellers except as set forth below) agrees to and shall defend, indemnify and hold harmless the Buyer and each of the Buyer's subsidiaries, Affiliates and parents, successors and permitted assigns, and each of their respective partners, officers, directors, employees and their respective heirs and legal and personal representatives (collectively, the "<u>Buyer's Indemnified Persons</u>") from and against, and shall reimburse the Buyer's Indemnified Persons for, any and all Losses to the extent such Losses are based upon, arise out of, or are related to: . . .

(c) any Claims of Product Liability for which the facts, events and circumstances with respect to such Products Liability Claim first arose prior to the Closing Date ("Product Liability Claim")[.]

The closing date for the Stock Purchase Agreement was May 25, 2011, and Lara alleges that he sustained his injuries on or about September 1, 2011. The parties do not dispute that at least some of Lara's claims are "Claims of Product Liability."[6]

The main issue is whether Lara's claims are claims "for which the facts, events and circumstances with respect to such [claim] first arose prior to the Closing Date." Grant Prideco contends that this indemnity applies to "any Claims of Product Liability" in which the allegedly *actionable conduct* occurred before the Closing Date. Empeiria contends that this indemnity applies to "any Claims of Product Liability" that *accrued* before the Closing Date.

The everyday words "facts," "events," "circumstances" and "arose" are not defined in the Stock Purchase Agreement. Nothing in the Stock Purchase Agreement suggests that these ordinary words are used in a technical sense or in

---

[6] The term "Product Liability" is defined in section 4.27(b) of the Stock Purchase Agreement, and the term "Claims" is defined in section 1.1 of the Stock Purchase Agreement.

any way other than to convey their ordinary and generally accepted meaning, so we give these words that meaning. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The phrase "the facts, events and circumstances with respect to such . . . Claim" has a broad scope that would encompass the allegedly actionable conduct that is the basis of Lara's claims, the harm or injury allegedly sustained as a result of that conduct, and other facts, events, and circumstances with respect to such a claim.

We do not agree with the interpretation of the contract put forward by Empeiria and apparently found by the trial judge: that the disputed paragraph applies only to claims that "accrued" before the closing date. If the parties had intended to permit indemnification only for legal causes of action that had "accrued" prior to the closing date, they easily could have used that term, which has a specific legal meaning, in the Stock Purchase Agreement. Appellees argue that one of the synonyms for "accrue" is "arise" which is the present tense of "arose." We find this argument unpersuasive.[7]

The words "arising out of" have been interpreted by courts as "broad, general, and comprehensive terms effecting broad coverage" in that the words are "understood to mean originating from, having its origin in, growing out of, or flowing from."[8] *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998);

---

[7] Empeiria also argues that no manufacturing company could ever be sold if Grant Prideco's interpretation of the indemnity language is upheld, citing *Nustar Energy L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no writ). That case, however, simply states that, in interpreting a contract, we bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Id.* at 466. We do not interpret *NuStar* to endorse setting aside well-established principles of contract interpretation. Contract interpretation principles limit our analysis to the intent of the parties as expressed in the agreement. *See E.I. Du Pont De Nemours & Co.*, 259 S.W.3d at 805.

[8] A claimant must commence a products liability action against a manufacturer or seller of certain manufacturing equipment before the end of 15 years after the date of sale of the

*see also Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 54 (Tex. 2011); *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 779 (Tex. App.—Corpus Christi 2002, no pet.). Black's Law Dictionary similarly defines "arise," in relevant part, as "[t]o originate[,] to stem (from)[,]" and "[t]o result (from)." *Black's Law Dictionary* 129 (10th ed. 2014). "Accrue," although a related term, is more narrow. In Texas jurisprudence, "accrue" means that "facts have come into existence that authorize a claimant to seek a judicial remedy." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). A judicial remedy is not available until facts, events, and circumstances result in a cognizable injury. *See Rice v. Louis A. Williams & Assocs., Inc.*, 86 S.W.3d 329, 337 (Tex. App.—Texarkana 2002, pet. denied) (discussing "legal injury rule" and noting that causes of action generally accrue when plaintiff is injured); *see also Reese v. Parker*, 742 S.W.2d 793, 797 (Tex. App.—Houston [14th Dist.] 1987, no writ) ("A cause of action will then accrue only when the plaintiff's legally protected interest has been invaded."). Thus, when "facts, events and circumstances arise" is a broader concept than when a claim accrues.

We conclude that Empeiria did not establish as a matter of law that the phrase "first arose" in the indemnity clause means "accrued." Empeiria did not present conclusive evidence of when the facts, events, and circumstances with respect to Lara's claims first arose.[9] Accordingly, the trial court erred in finding as a matter of law that the facts, events, and circumstances made the basis of Lara's claims did not arise prior to the closing date, and Empeiria is not required to

equipment by the defendant. Tex. Civ. Prac. & Rem. Code § 16.012(b). Thus, a manufacturer may be held responsible for long-ago activities.

[9] Lara alleges, among other things, that he was injured when he was working with a multi-sander manufactured, designed, marketed, and distributed by APPCO and others. Empeiria presented no evidence of when the multi-sander was "manufactured, designed, marketed, and distributed" or its condition at that time.

8

indemnify Grant Prideco. Thus, the trial court erred in granting Empeiria's summary-judgment motion on those bases.

Similarly, although Grant Prideco established as a matter of law that the language "first arose" in the indemnity clause is broader than "accrued," Grant Prideco did not present conclusive evidence of when the facts, events, and circumstances with respect to Lara's claims first arose and accordingly did not establish as a matter of law that it was entitled to indemnification from Empeiria.[10] Thus, the trial court did not err in denying Grant Prideco's summary-judgment motion.

### *Conclusion*

We conclude the trial court erred in granting Empeiria's summary-judgment motion, but did not err in denying Grant Prideco's summary-judgment motion. Because resolution of the issues rests on disputed facts, we reverse the trial court's judgment and remand this case to the trial court for proceedings consistent with this opinion. *See Lidawi*, 112 S.W.3d at 729-30.

/s/ Martha Hill Jamison
   Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise (Frost, C.J., dissenting).

---

[10] It is undisputed that the Lara lawsuit was filed after the closing date. The record does not reveal whether the alleged "facts, events and circumstances" "first arose" prior to the closing date, if Grant Prideco sustained a loss under the Stock Purchase Agreement, or if so, the amount of the loss. Grant Prideco's brief states, without record cite, that the equipment that allegedly injured Lara was designed and manufactured prior to 2001. Grant Prideco's summary judgment motion cited Empeiria's motion to support this argument. Empeiria's motion cited Lara's petition, but no evidence was presented on this issue. Unsupported argument is not evidence. *Green v. Brantley*, 11 S.W.3d 259, 264 (Tex. App.—Fort Worth 1999, pet. denied).