

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00206-CV

_____

PAMELA JIMISON, Appellant

V.

MAEDC-HULEN BEND SENIOR COMMUNITY, L.P., Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2023-002802-1

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Following a jury trial in this forcible detainer case involving an apartment in Fort Worth, the county court at law rendered judgment awarding possession of the apartment to Appellee MAEDC-Hulen Bend Senior Community, L.P. (MAEDC). In six issues on appeal—some of which contain subissues—Appellant Pamela Jimison, proceeding pro se, complains that (1) the trial court (a) displayed bias and prejudice at a pretrial conference and (b) erred by excluding certain evidence that she had offered at the pretrial conference; (2) the trial court denied her right to a fair trial by (a) displaying bias and prejudice at trial, (b) "dropping the elder abuse portion of [her] cause on the day of trial," (c) showing favoritism toward MAEDC with respect to the jury charge, and (d) excluding certain evidence that she had offered at trial; (3) her eviction was improper because it was motivated by MAEDC's desire to retaliate against her for trying to start a community crime watch program; (4) MAEDC violated the "30 Day Eviction Rule"; (5) the evidence is factually insufficient to support the jury's verdict; and (6) MAEDC's actions against a different tenant constituted retaliation.

We will hold that Issue 2(b) is moot due to the fact that a writ of possession was executed on the apartment and that issue does not raise a potentially meritorious claim of right to current, actual possession of the apartment. We will overrule the remainder of Jimison's issues and affirm the trial court's judgment.

## II. BACKGROUND

### A. Jimison's Lease with MAEDC

In September 2022, Jimison signed a lease agreement (the Lease) with MAEDC to rent an apartment in Fort Worth. The Lease had a one-year term, beginning on October 1, 2022, and ending on September 30, 2023. Paragraph 4 of the Lease provided that the Lease would "automatically renew month-to-month unless either party g[ave] written notice of termination or intent to move out" as provided elsewhere in the Lease.

Pursuant to Paragraph 11 of the Lease, Jimison "agree[d] to communicate and conduct [herself] in a lawful, courteous[,] and reasonable manner at all times when interacting with [MAEDC], [its] representatives[,] and other residents or occupants." Jimison further agreed that "[a]ny acts of unlawful, discourteous[,] or unreasonable communication or conduct by [her] . . . [would constitute] a breach of this Lease." Jimison also agreed that she would not engage in "certain prohibited conduct," including "behaving in a loud, obnoxious[,] or dangerous manner"; "disturbing or threatening the rights, comfort, health, safety, or convenience of others, including [MAEDC], [its] agents, or [its] representatives"; and "disrupting [MAEDC's] business operations." Paragraph 23.2 of the Lease provided that if Jimison was in default of the Lease, MAEDC could end her right of occupancy by giving her "at least a 24-hour written notice to vacate."

3

**B. Jimison's Numerous Complaints to MAEDC Regarding Her Belief That Other Tenants Were Dealing Drugs at the Apartment Complex, and Jimison's Attempt to Start a Community Crime Watch Program**

Jimison had multiple doorbell cameras installed at her apartment, and the door of her apartment displayed signs warning those passing by that they were being watched. Jimison made numerous complaints to Tonya Frisina, the community director of the apartment complex, regarding her belief that other tenants in the complex were dealing drugs.[1] Frisina investigated Jimison's complaints—as did the Fort Worth Police Department's narcotics division—but no evidence of drug dealing was discovered.

Jimison also tried to start a community crime watch program at the apartment complex, and she spoke to Frisina about starting the program. Around January 2023, an "impromptu meeting" was conducted regarding the program. According to Frisina, Jimison's presentation resulted in "bad feedback" with people saying that they did not want to be part of the program if Jimison was going to be leading it. As a result of that feedback, Frisina cancelled a later meeting that had been scheduled to further discuss the program.

---

[1]Jimison also complained to Frisina and others about dogs at the complex. At trial, Jimison testified that she told one dog owner that "the next time you allow your dog to come near me you going to have a vet bill," and she told another dog owner that "the next time you let your dog come near me, you're either buried or you have a vet bill."

**C. Jimison's March 13, 2023 Complaint to Frisina, Jimison's March 14, 2023 Disturbance at Frisina's Office, and MAEDC's March 15, 2023 Notice to Vacate**

On March 13, 2023, Jimison emailed Frisina to complain about a man who had been walking near her apartment and who she thought was suspicious.[2] Jimison told Frisina that she had video and screenshot photos of the man that had been taken with her doorbell cameras. Jimison testified that she found the man to be suspicious because he was always "in and out [of the apartment he visited] in seven minutes." Jimison suspected that the man was involved in drugs.[3]

The same day that Jimison sent the email, Frisina contacted the tenant of the apartment in which the man had entered, and the tenant told Frisina that the man was her guest. Later that day, Frisina sent Jimison an email stating, "I have spoke[n] with [the tenant,] and that is her company." Later that night, an "extremely upset" Jimison contacted Brad Herle, a Fort Worth police officer who worked as the courtesy officer at the apartment complex, to complain that Frisina had endangered her life by contacting the tenant about the suspicious man.[4]

---

[2]Frisina testified that Jimison had sent her numerous emails about the man. When asked how many photos Jimison had sent regarding the man, Frisina stated, "I probably got four emails a day with pictures and videos of the man."

[3]At trial, Jimison intimated that she had a keen sense for detecting drug activity, telling the jury that she had "facilitat[ed] million[-]dollar drug deals" in the past and had been in prison.

[4]Frisina testified that she never told the tenant the identity of the person who had made the complaint and that she did not mention Jimison's name to the tenant.

The next day—March 14, 2023—Jimison emailed Frisina to tell her that she had put her life in danger by contacting the tenant. After Jimison sent that email, she saw the man pass by her apartment, and the man allegedly "look[ed] over at [her] apartment and sh[ook] his head." Jimison viewed that gesture as a "threat." Jimison then went to the MAEDC management office where she sought to speak to Frisina.

Jimison encountered Tammy Howlett, the assistant manager of the apartment complex. Howlett testified that she was sitting in the management office when "all of a sudden," she "hear[d] a lot of commotion" caused by Jimison. Jimison wanted to speak to Frisina. According to Howlett, Frisina refused to come out of her office to speak to Jimison, and Jimison "got really upset" and started "going a little berserk."

According to Frisina, she saw Jimison "yelling and screaming and jumping up and down [and] throwing her arms," telling Frisina that she had put Jimison's life in danger. Frisina testified that she felt "[v]ery nervous" and "[a] little scared" because of Jimison's conduct. Herle, the courtesy officer, intervened, closing the door to Frisina's office and escorting Jimison into the hallway.

Herle testified that Jimison was "very upset, very loud, [and] very angry" during the interaction. He stated that she was "screaming" and "talking very loudly," which caused the MAEDC staff to be "extremely upset" and "scared." Herle testified that Jimison was "acting irrational" and that she "wouldn't calm down." Herle estimated that the situation with Jimison lasted "[m]aybe up to an hour," noting that Fort Worth patrol officers also arrived on the scene to "deal with [Jimison]."

6

The next day—March 15, 2023—MAEDC sent Jimison a notice to vacate the apartment. In that notice, Jimison was informed that she had violated Paragraph 11 of the Lease. As to the nature of the violation, the notice to vacate stated,

> On March 14, 2023, you visited the property management office and began screaming outside of the property manager's office, resulting in a call to the police. In addition, you frequently engage in correspondence with the management office where you inaccurately report that your neighbor and your neighbor's guests are drug dealers. You constantly monitor your Ring doorbell and report anyone who passes by your camera as being a drug dealer. Paragraph 11 of your Lease prohibits behaving in a loud, obnoxious[,] or dangerous manner; disturbing or threatening the rights, comfort, health, safety[,] or convenience of others; and disrupting [MAEDC's] business operations.

Due to that alleged violation of the Lease, MAEDC terminated Jimison's rights of occupancy and possession of the apartment and gave her notice that she must vacate the apartment on or before midnight on March 19, 2023. Jimison did not leave the apartment as required by the notice to vacate.

## D. Procedural Background

On March 22, 2023, MAEDC sued Jimison in a Tarrant County justice court for forcible detainer. Jimison answered the lawsuit, and MAEDC later received a judgment in the justice court granting it possession of the apartment. Jimison appealed that decision to County Court at Law No. 1—the trial court of the instant appeal. In the proceedings before the county court at law, Jimison filed an answer in which she argued that MAEDC had violated Section 92.331 of the Texas Property Code by retaliating against her "as 'punishment' for exercising her legal rights." *See*

7

Tex. Prop. Code Ann. § 92.331. She also argued that MAEDC—through Frisina—had "engaged in a course of conduct [that] amount[ed] to Elder Abuse and Elder Emotional Abuse."

The case proceeded to a jury trial in June 2023. Jimison represented herself at trial. Frisina, Howlett, Herle, and Jimison testified at trial. At the trial's conclusion, the jury found that Jimison had breached the Lease, that MAEDC had properly delivered its notice to vacate to Jimison, that MAEDC's decision to evict Jimison was not in retaliation for Jimison's trying to start a community crime watch program, and that MAEDC had incurred $1,000 in reasonable and necessary attorney's fees for work done at the trial level. The trial court later signed a final judgment in accordance with the jury's verdict. As part of that judgment, the trial court awarded MAEDC possession of the apartment.

This appeal followed. While Jimison's appeal was pending, MAEDC obtained a writ of possession pertaining to the apartment, and the writ of possession was executed. Jimison was evicted from the apartment on July 20, 2023.

## III. DISCUSSION

### A. Mootness

In MAEDC's brief, it argues that Jimison's appeal is moot because she "is no longer in possession of the premises." We address this issue first because courts have no jurisdiction to decide moot cases. *See Antolik v. Antolik*, 625 S.W.3d 530, 537 (Tex.

8

App.—Texarkana 2021, pet. denied); *Feist v. Gutierrez*, No. 03-18-00474-CV, 2019 WL 3436996, at *1 (Tex. App.—Austin July 31, 2019, no pet.) (mem. op.).

### 1. Applicable Law

A forcible detainer action is "intended to be a speedy, simple, and inexpensive means to obtain immediate possession of property." *Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006). The only issue in a forcible detainer action is the right to actual possession of the property. *Id.* at 785; *Tehuti v. Ha To Tu*, No. 02-17-00440-CV, 2019 WL 1186791, at *2 (Tex. App.—Fort Worth Mar. 14, 2019, pet. dism'd w.o.j.) (mem. op.); *see* Tex. R. Civ. P. 510.3(e).

If a county court grants a forcible detainer judgment against the defendant and the defendant fails to supersede the judgment, the judgment may be enforced, and a writ of possession may be executed, evicting the defendant from the property. *Tehuti*, 2019 WL 1186791, at *2; *see* Tex. Prop. Code Ann. § 24.007. If a defendant in a forcible detainer action fails to supersede the judgment and loses possession of the property, the appeal is moot unless the defendant (1) timely and clearly expresses the intent to appeal and (2) "the appellate relief requested is not futile, that is, the defendant 'held and asserted a potentially meritorious claim of right to current, actual possession of the [property].'" *Tehuti*, 2019 WL 1186791, at *2 (quoting *Marshall*, 198 S.W.3d at 787).

Thus, in order to determine whether the appeal is moot, we must examine Jimison's arguments on appeal to determine whether any provide an arguable basis for

9

claiming a right to current, actual possession of the apartment. *See id.* ("[The appellant's] appeal is therefore moot unless he has asserted a potentially meritorious claim of right to current, actual possession of the property."); *Johnson v. Freo Tex. LLC*, No. 01-15-00398-CV, 2016 WL 2745265, at *2 (Tex. App.—Houston [1st Dist.] May 10, 2016, no pet.) (mem. op.) ("Thus, in order to determine whether the appeal is moot, we must examine [the appellant's] claims to determine whether any provide a basis for claiming a right to current, actual possession of the home."); *Geters v. Baytown Hous. Auth.*, 430 S.W.3d 578, 582 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (briefly reviewing merits of appellant's arguments on appeal to determine whether she "maintain[ed] an arguable basis for asserting a right to possession").

An appellant presents an arguable basis for current, actual possession when the appellant's lease contains an automatic renewal provision, and the appellant challenged the basis for the lease's underlying termination. *Abraham v. Victory Apartments*, 578 S.W.3d 659, 662 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (first citing *Geters*, 430 S.W.3d at 581–83; and then citing *Kennedy v. Andover Place Apartments*, 203 S.W.3d 495, 497 (Tex. App.—Houston [14th Dist.] 2006, no pet.)).

### 2. Analysis

Here, it is undisputed that Jimison did not supersede the trial court's judgment, that a writ of possession was executed on the apartment, and that Jimison is no longer

10

in possession of the apartment.[5]  Thus, her appeal is moot unless it contains an arguable basis for claiming a right to current, actual possession of the apartment.  *See Tehuti*, 2019 WL 1186791, at *2; *Johnson*, 2016 WL 2745265, at *2; *Geters*, 430 S.W.3d at 582.

On appeal, Jimison challenges the underlying reason for the Lease's termination:  she complains that the Lease was improperly terminated as a result of MAEDC's retaliation against her for trying to start a community crime watch program.  Given the automatic renewal provision in the Lease, this argument constitutes an arguable basis for her claiming a right to current, actual possession of the apartment.  *See Abraham*, 578 S.W.3d at 662 (holding that appellant "present[ed] an arguable basis for asserting a right to possession" because his lease contained "an automatic renewal clause" and because he "challenge[d] the reason underlying the lease's termination"); *Kennedy*, 203 S.W.3d at 497 ("[A]lthough the initial term of [the appellant's] lease expired during the pendency of this action[,] . . . [the appellant] has

---

[5]In her reply brief, Jimison argues that she was not required to supersede the judgment because she is indigent.  But a party's indigence does not relieve her of the obligation to file a supersedeas bond.  *See Morse v. Fed. Nat'l Mortg. Ass'n*, No. 05-18-00999-CV, 2018 WL 4784585, at *2 (Tex. App.—Dallas Oct. 4, 2018, no pet.) (mem. op.) ("Appellant's indigence is not a pass of the requirement of a supersedeas bond in this appeal from a judgment in a forcible detainer suit."); *Johnson*, 2016 WL 2745265, at *2 ("A defendant's indigence does not relieve her of the obligation to file a supersedeas bond."); *see also* Tex. Prop. Code Ann. § 24.007 ("A judgment of a county court may not under any circumstances be stayed pending appeal unless, within 10 days of the signing of the judgment, the appellant files a supersedeas bond in an amount set by the county court.").

asserted a basis for claiming a current right to possession after the date the lease expired based on its automatic renewal provision. Thus, we determine this action is not moot.").

Most of the issues raised by Jimison on appeal relate to her challenge to the underlying reason for the Lease's termination—either directly (Issues 3 and 5) or indirectly (Issues 1(a) and (b); 2(a), (c), and (d); 4; and 5). But her issue complaining that the trial court declined to hear any affirmative claim for damages that she may have had relating to "elder abuse" (Issue 2(b)) does not have anything to do with her assertion of a right to current, actual possession of the apartment; thus, we dismiss that issue as moot.[6] *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) ("If only some claims or issues become moot, the case remains 'live,' at least as to other claims or issues that are not moot."); *In re S.R.*, No. 02-16-00401-CV, 2018 WL 6816108, at *2–3 (Tex. App.—Fort Worth Dec. 27, 2018, no pet.) (mem. op.) (dismissing four of appellant's issues as moot but addressing appellant's remaining issues).

---

[6]In any event, such a counterclaim for damages is not recoverable in a forcible detainer suit. *See* Tex. R. Civ. P. 510.3(e) ("Counterclaims . . . are not permitted in eviction cases."); *Retledge v. Santana*, No. 04-19-00343-CV, 2021 WL 2118370, at *2 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) ("[D]amages for wrongful or retaliatory eviction are not recoverable in the forcible detainer action."); *see also* Tex. Prop. Code Ann. § 92.335 (providing that while "retaliation by the landlord under Section 92.331 is a defense" to an eviction suit, "[o]ther judicial actions . . . may not be joined with an eviction suit or asserted as a defense or crossclaim in an eviction suit").

## B. Jimison's Complaints of Bias, Prejudice, and Favoritism

Jimison raises several complaints contending that the trial court displayed bias and prejudice against her and in favor of MAEDC. In Issue 1(a), Jimison contends that the trial court displayed bias and prejudice at the pretrial conference. In Issue 2(a), Jimison argues that the trial court displayed bias and prejudice at the trial. In Issue 2(c), Jimison maintains that the trial court showed favoritism toward MAEDC with respect to the jury charge.

First, we address whether Jimison has preserved these complaints. A party usually must object to a trial court's allegedly improper conduct or comments. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must also get a ruling—either express or implied—from the trial court. Tex. R. App. P. 33.1(a)(2)(A), (b); *see Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002). If the trial court refuses to rule, the party preserves error by objecting to that refusal. Tex. R. App. P. 33.1(a)(2)(B). If the trial court does not rule and if the party does not object to the refusal to rule, error is not preserved. *Id.*

Here, Jimison did not make a timely request, objection, or motion regarding the alleged claims of bias, prejudice, and favoritism that she now makes on appeal. In her reply brief, Jimison contends that she has preserved these complaints, pointing to a document she filed in the trial court titled "Improprieties of the Court." That filing contained several complaints regarding the trial court's rulings at the pretrial conference. But that filing does not contain a prayer, nor does it seek any form of relief. Moreover, while that filing was briefly mentioned at the trial, there is no indication in the record that the trial court ever ruled on that filing. Thus, we hold that Jimison has not preserved these complaints on appeal.[7] *See* Tex. R. App. P. 33.1.

Even if Jimison had preserved these complaints, we would still reject them. While all parties have the right to a trial before a fair and impartial tribunal, in the absence of clear proof to the contrary, we will presume that a trial court is impartial and unbiased. *De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *3 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.); *Place v. McCoy*, No. 01-20-00186-CV, 2021 WL 3500989, at *5 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, no pet.) (mem. op.). To reverse a judgment because of improper conduct or comments of the trial court, we must find (1) that judicial impropriety was in fact

[7]In her reply brief, Jimison also maintains that the trial court's bias, prejudice, and favoritism were on display during certain "private conferences," and she complains that the court reporter did not provide any transcripts of those "private conferences" despite her request for such transcripts. We asked the court reporter about the alleged missing transcripts, and the court reporter responded, "There are no more court transcripts that were taken by the court reporter. All have been filed."

14

committed and (2) probable prejudice to the complaining party. *De Los Reyes*, 2021 WL 5227179, at *3; *Place*, 2021 WL 3500989, at *5. "Bias on the part of the trial court can seldom be established solely on the court's judicial rulings." *De Los Reyes*, 2021 WL 5227179, at *3 (citing *Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *7 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.)).

Here, Jimison's complaints are focused on rulings made by the trial court—that it did not admit certain of her exhibits, that it refused to address her counterclaim concerning "elder abuse" because it was outside of the court's jurisdiction, and that it used a proposed jury charge submitted by MAEDC's counsel rather than the proposed jury charge that she had submitted. We have reviewed the record from the pretrial conference[8] and the record from the trial, and we hold that the trial court did not exhibit a deep-seated favoritism or antagonism that deprived Jimison of a fair trial. *See De Los Reyes*, 2021 WL 5227179, at *4 ("[Appellant's] contentions merely demonstrate disagreement with the trial court's rulings, but the rulings themselves do not reveal a deep-seated favoritism or antagonism that suggests fair judgment on the part of the trial court was impossible. Thus, we reject Appellant's contention that the rulings establish that the trial court harbored a bias that deprived him of [a fair trial]."); *Song*, 2020 WL 1808487, at *7 (holding that judicial rulings alone almost never

---

[8]The record pertaining to the pretrial conference is contained within the transcript from the trial. It consists of thirteen lines of transcript, reflecting that the trial court pre-admitted six of MAEDC's trial exhibits and pre-admitted twenty-six of Jimison's trial exhibits.

constitute a valid basis for bias or impartiality unless they display a "deep-seated favoritism or antagonism that would make fair judgment impossible"). We overrule Issues 1(a), 2(a), and 2(c).

## C. Jimison's Evidentiary Complaints

Jimison also raises several evidentiary complaints. In Issue 1(b), Jimison contends that the trial court erred by excluding certain evidence that she offered at the pretrial conference. In Issue 2(d), Jimison argues that the trial court erred by excluding certain evidence that she offered at trial. Through these issues, Jimison specifically complains that the trial court erred by excluding Defendant's Exhibits 9 and 32–34.

We review a trial court's evidentiary rulings for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles; that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

But before we consider whether an abuse of discretion has occurred, the error must be preserved for our review. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2). To preserve error in excluding evidence, a party must make an offer of proof unless the substance of the evidence is apparent from the context. Tex. R. Evid. 103(a)(2). "The primary purpose of an offer of proof is to enable the appellate court to determine whether the exclusion was erroneous and harmful." *In re L.L.J.*, No. 02-14-

00407-CV, 2015 WL 5634111, at *1 (Tex. App.—Fort Worth Sept. 24, 2015, no pet.) (mem. op.). "A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence." *Id.*

Here, Jimison did not make an offer of proof with respect to Defendant's Exhibits 9 and 32–34, and thus, those exhibits do not appear in the appellate record.[9] Thus, Jimison's complaints relating to the trial court's exclusion of those exhibits have not been preserved for appellate review.[10] *See Jones v. Ramirez-Rodriguez*, No. 03-14-00230-CV, 2015 WL 4998992, at *3 (Tex. App.—Austin Aug. 21, 2015, pet. dism'd w.o.j.) (mem. op.) ("[The appellant] did not make an offer of proof or bill of exception as to the exhibits that she sought to admit during trial. . . . Thus, she has

---

[9]Jimison attached as appendices to her brief what she purports to be Defendant's Exhibits 9 and 32. "The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal; therefore, the documents cannot be considered." *LeBlanc v. Fed. Home Loan Mortg. Corp.*, No. 02-10-00004-CV, 2011 WL 856896, at *1 n.3 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op.). Accordingly, we will not consider the exhibits that are attached to Jimison's brief and that are not also included in the appellate record. *See id.*

[10]In her reply brief, Jimison also complains about the trial court's purported exclusion of Defendant's Exhibits 15–18. But, "[a] party may not raise new issues for the first time on appeal in a reply brief." *Crowder v. Scheirman*, 186 S.W.3d 116, 119 n.1 (Tex. App.—Houston [1st Dist.] 2005, no pet.). We thus need not consider Jimison's complaint as to those exhibits. *See Anderson v. Innovative Insulation, Inc.*, No. 02-21-00183-CV, 2021 WL 5742082, at *7 n.12 (Tex. App.—Fort Worth Dec. 2, 2021, no pet.) (mem. op.) (refusing to consider argument raised for the first time in appellant's reply brief). Even if we were to consider Jimison's complaint as to those exhibits, the record reflects that the trial court admitted Defendant's Exhibits 15–16 (thus, there would be no error with respect to those exhibits) and that Jimison did not make an offer of proof with respect to Defendant's Exhibits 17–18 (thus, Jimison's complaints as to those exhibits have not been preserved).

failed to preserve any error for appellate review."); *Rumfolo v. Angelo*, No. 01-99-01098-CV, 2000 WL 1877724, at \*2 (Tex. App.—Houston [1st Dist.] Dec. 28, 2000, no pet.) (not designated for publication) ("Appellants, however, did not make offers of proof so that the exhibits could be included in the appellate record. These points, therefore, have not been preserved for appellate review."). We overrule Issues 1(b) and 2(d).

## D. Jimison's Sufficiency Complaints

In Issue 3, Jimison argues that her eviction was improper because it was motivated by MAEDC's desire to retaliate against her for trying to start a community crime watch program. We construe that issue as a challenge to the legal sufficiency of the evidence. *See Regal Fin. Co., Ltd. v. Tex. Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010) (noting that evidence is legally insufficient when it "conclusively establishes the opposite of the vital fact"). In Issue 5, Jimison argues that the evidence is factually insufficient to support the jury's verdict.

We must first address whether Jimison has preserved these complaints. After a jury trial, a legal-sufficiency challenge may be preserved in the trial court in one of the following ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021). To preserve a factual-sufficiency challenge, a party must file a motion for new trial. *Id.*; *see also* Tex. R. Civ. P. 324(b)(2)–(4).

18

Here, Jimison did not file a motion for instructed verdict, did not file a motion for judgment notwithstanding the verdict, did not object to the submission of the issue to the jury, did not file a motion to disregard the jury's answer to a vital fact issue, and did not file a motion for new trial. Thus, she has not preserved her legal-sufficiency complaint. *See Perez v. Williams*, No. 02-21-00395-CV, 2022 WL 17351581, at \*5 (Tex. App.—Fort Worth Dec. 1, 2022, no pet.) (mem. op.) (holding that appellant failed to preserve his legal-sufficiency complaint when he failed to file a motion for instructed verdict, a motion for judgment notwithstanding the verdict, a motion to disregard the jury's answer, or an objection to the submission of an issue and when his motion for new trial challenged only the factual sufficiency of the evidence).

And here, because Jimison did not file a motion for new trial, she likewise has not preserved her factual-sufficiency complaint. *See In re A.S.*, No. 02-23-00160-CV, 2023 WL 4779826, at \*5 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.) ("Mother did not file a motion for new trial and thus failed to preserve her factual-sufficiency complaint for appeal."). We overrule Issues 3 and 5.

## E. Jimison's Remaining Complaints Waived Due to Inadequate Briefing

In Issue 4, Jimison argues that MAEDC violated the "30 Day Eviction Rule." In Issue 6, Jimison argues that MAEDC's actions against another tenant constituted retaliation. We hold that Jimison waived these issues due to inadequate briefing.

### 1. Applicable Law

Rule 38.1 of the Texas Rules of Appellate Procedure contains specific requirements for an appellant's brief. *See* Tex. R. App. P. 38.1. To comply with Rule 38.1, an appellant's brief must, among other things, contain a clear and concise argument for the contentions made, with appropriate citations to legal authority and to the record. Tex. R. App. P. 38.1(i); *In re A.N.G.*, 631 S.W.3d 471, 476 (Tex. App.—El Paso 2021, no pet.). Merely uttering brief, conclusory statements unsupported by citation to legal authorities does not satisfy briefing requirements. *A.N.G.*, 631 S.W.3d at 476; *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). Indeed, "[f]ailure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint." *Valadez*, 238 S.W.3d at 845.

In reviewing for briefing waiver, we are required to construe briefs liberally so as not to waive the right to appellate review. *In re I.J.K.*, No. 08-22-00055-CV, 2023 WL 3153645, at *4 (Tex. App.—El Paso Apr. 28, 2023, pet. denied) (mem. op.) (citing *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020)). Similarly, we should hesitate to resolve cases on procedural defects and instead work to resolve cases on their merits. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213–14 (Tex. 2020). Even still, "[w]e are not responsible for identifying possible trial court error, searching the record for facts favorable to a party's position, or conducting legal research to support a party's contentions." *In re*

20

*J.O.A.M.*, No. 01-23-00691-CV, 2024 WL 1169432, at *23 (Tex. App.—Houston [1st Dist.] Mar. 19, 2024, no pet.) (mem. op.). "Were we to engage in such activities, we would be abandoning our role as judges and taking on the role of advocate for that party." *Id.* (citing *Valadez*, 238 S.W.3d at 845).

Pro se litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978); *In re A.W.*, No. 02-21-00317-CV, 2022 WL 1496545, at *1 n.1 (Tex. App.—Fort Worth May 12, 2022, no pet.) (mem. op.).

### 2. Analysis

As to Issue 4, Jimison states, "According to the Texas Eviction Process & Laws for Landlords & Property Managers, the landlords have to issue a 30-Day Notice to Vacate." But Jimison does not cite us to any specific legal authority to support her contention,[11] nor does she cite us to any portion of the appellate record that would indicate that she was entitled to thirty days' notice to vacate her apartment following MAEDC's termination of the Lease.[12] Accordingly, we hold that Jimison has inadequately briefed Issue 4. *See Windsor v. Fleming*, No. 10-14-00392-CV, 2019

---

[11]In our research, we have found no legal authority titled "Texas Eviction Process & Laws for Landlords & Property Managers."

[12]In the heading of the argument section pertaining to this issue, Jimison also mentioned Section 91.001 of the Texas Property Code. But Jimison fails to cite that section again in the argument section of her brief, and she fails to explain how that section—which applies to "[a] monthly tenancy or a tenancy from month to month"—is pertinent to her case. *See* Tex. Prop. Code Ann. § 91.001.

WL 3804484, at *15 (Tex. App.—Waco Aug. 7, 2019, pet. denied) (mem. op.) (holding that issue was inadequately briefed because it contained no citations to legal authorities and was conclusory); *Scott v. King*, No. 01-06-00565-CV, 2008 WL 864026, at *5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2008, pet. denied) (mem. op.) ("This contention is not supported by citations to supporting legal authority or the record and is inadequately briefed.").

As to Issue 6, Jimison argued that MAEDC's actions against a different tenant constituted retaliation. The argument section pertaining to this issue does not contain any citations to legal authorities or to the appellate record.[13] It simply contains Jimison's argument that MAEDC did not renew the lease of a different tenant after that tenant gave Jimison a copy of the tenant's lease violation. We hold that Jimison has inadequately briefed Issue 6.[14] *See Windsor*, 2019 WL 3804484, at *15; *Scott*, 2008 WL 864026, at *5.

We overrule Issues 4 and 6.

_____

[13]The argument section does mention Defendant's Exhibit 32, an exhibit that is not part of the appellate record. Defendant's Exhibit 32 is ostensibly "a copy of [the other tenant's] lease violation."

[14]We also fail to see how Jimison would have standing to raise any complaint regarding MAEDC's retaliation against the other tenant. *See Hawk v. Wallace*, No. 02-21-00044-CV, 2022 WL 60736, at *2 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) ("To establish standing, a party must have a personal stake in the controversy."). Moreover, we fail to see how MAEDC's decision to not renew the lease of a different tenant is in any way relevant to MAEDC's decision to terminate Jimison's lease.

## F. Superfluous Request and Possible Additional Issues

In the three pages of Jimison's brief that precede her prayer, she argues that she should be awarded compensation for having to move. Jimison, however, is not entitled to be compensated for losing the forcible detainer action. *See Retledge*, 2021 WL 2118370, at \*2. Moreover, to the extent that Jimison's argument section, which does not track the issues she raised in her "Issues Presented" section, raises additional issues, we overrule them as inadequately briefed.[15] *See In re J.R.*, No. 02-23-00071-CV, 2024 WL 191211, at \*4 (Tex. App.—Fort Worth Jan. 18, 2024, pet. denied) (mem. op.).

---

[15]After her appeal was submitted, Jimison filed a "Request for Writ Quo Warranto" (the Motion). Through the Motion, Jimison argues that the trial judge who presided over her case "has been acting in a public office to which he is not entitled and that he does not have the authority to hold the public office of judge." Specifically, Jimison complains that the trial judge filed "his anti-bribery statement (Form 2201 - Statement of Officer) and Form 2204 - Oath of Office with the local government of Tarrant County, Texas," rather than with "the Office of the Texas Secretary of State, Elections Division." *See* Tex. Const. art. XVI, § 1. We deny the Motion. *See Espinosa v. State*, 115 S.W.3d 64, 66 (Tex. App.—San Antonio 2003, no pet.) ("The fact that the anti-bribery oath was not filed is not sufficient to render Judge Priest's oath void. The failure to file the oath with the Secretary of State does not vitiate the oath or deprive the judge of the authority to preside in a case."); *Wilson v. State*, 944 S.W.2d 444, 445 (Tex. App.—Houston [14th Dist.] 1997) ("It is well settled that the proper method to challenge the authority of the trial judge is to bring a direct action through a quo warranto proceeding rather than by a collateral attack on appeal."), *aff'd*, 977 S.W.2d 379 (Tex. 1998); *Randall v. State*, 875 S.W.2d 43, 44 (Tex. App.—Fort Worth 1994, no writ) ("When a judge is holding office under color of title by appointment or election, the proper method for challenging the authority of the trial judge is to bring a direct action through quo warranto proceedings rather than a collateral attack on appeal." (italics removed)).

## IV. CONCLUSION

Having determined that Issue 2(b) is moot, we dismiss the portion of Jimison's appeal pertaining to that issue. Having overruled the remainder of Jimison's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 3, 2024